## WILCOX *v.* FIVE HUNDRED TONS OF COAL.

*(Circuit Court, N. D. Illinois.* November 26, 1880.)

1. ADMIRALTY—LIEN FOR FREIGHT—DELIVERY.

As a rule, where the cargo has been delivered to the consignee, the ship-owner does not retain a lien thereon for his freight unless there is an understanding between the parties, when the goods are delivered to the consignee, to that effect, or it is the usage of the port where the cargo is delivered that the lien shall remain.

2. SAME—NEGLIGENCE OF CAPTAIN—WINTERING.

The evidence in this case showing that the captain was not guilty of negligence in not completing the voyage on account of rough weather, it was *held* that the district court erred in awarding damages on that account.

v.14,no.1—4

In Admiralty.

*W. H. Condon*, for libelant.

*Robert Rae*, for respondent.

DRUMMOND, C. J.   The schooner American was at Oswego in the fall of 1872, and took in a cargo of coal for Chicago, leaving Oswego on the tenth of November.   A general bill of lading was given, and a high price charged for the transportation of the coal from Oswego to Chicago, being $2.75 per ton.   The schooner met with adverse winds and did not arrive at Port Huron until November 29th.   The weather, according to the testimony of the witnesses, was very inclement that fall, and the captain concluded that the safest course was to strip the vessel and lay up at Port Huron.   The schooner accordingly remained there with her cargo during the winter, and the coal was not delivered in Chicago or received by the consignees until May 8, 1873, when the spring freight was paid by the consignees on the coal, being much less than that charged in the bill of lading.   After the coal had been thus delivered by the schooner to the consignees, a libel was filed claiming the amount of freight stated in the bill of lading, the consignees having refused to pay any more than the spring price of freight.   The case went to proof before the district court, where the libel was dismissed; but a cross-libel having been filed claiming that the captain of the American was negligent in wintering at Port Huron, and that the vessel should have come on in the fall of 1872, the district court gave a decree on the cross-libel for damages against the libelants in consequence of the supposed negligence of the captain.   From these decrees the libelants have appealed to this court, and the question is whether the decrees of the district court are right.

The first question is on the decree of the district court dismissing the libel.   That decree, I think, was right.   The rule laid down by the supreme court of the United States in *Bags of Linseed*, 1 Black, 108, is that in order that the ship-owner should retain a lien on the cargo for the freight, it should not be delivered to the consignee.   The rule is absolute, and there may be circumstances where a cargo may be delivered to the consignee and the lien of the ship-owner retained.   But the supreme court declares that in all such cases, when the goods are delivered to the consignee, there must be an understanding between the parties that the lien of the ship-owner remains upon the cargo; or it must appear there is an established local usage of the port where the cargo is delivered, that the lien shall remain.   I do not think this case is brought within any of the rules laid down

by the supreme court.   The language of the libel is "that by reason of the premises the libelants acquired a lien on said cargo for the freight thereon, as set forth above," which amounted in the whole to the sum of $1,375.   This was the amount due for freight, on the assumption that $2.75 per ton was to be paid, claiming the whole amount as contained in the bill of lading.

The answer of the claimants to this allegation of the libelant is that, in regard to the matter stated in the fifth article of the libel on information and belief, they deem the same to be true; and it is claimed on the part of libelant that there is an admission in the answer that the libelant had a lien.    But I think this is not a true construction of the language of the answer.    It is entirely inconsistent with other claims set forth in the answer, and it could not have been the meaning of the defendants in the court below, and they could not have intended to admit that the libelant had a lien on the cargo for the whole amount of the stipulated freight.    I take it, therefore, all they intended to admit was that if the freight had been brought to Chicago in the fall of 1872, then the vessel would have had a lien for the freight stipulated in the bill of lading.    This question of pleading being decided adversely to the libelant, is there any other proof which will bring the case within the rule as stated by the supreme court of the United States?    I think there is not.    Certainly, there was no understanding on the part of the consignees that the lien was retained by the libelant; there is no proof whatever of any statement made or claim insisted on at the time the property was delivered to the consignees.    There is no settled usage of the port of Chicago shown upon the subject of these liens where the property is delivered to the consignee.    So on that account I think the lien must fail.    But, independent of that, it may be a question whether the fair construction of the contract between the parties was not that the price was to be paid on the assumption that the property was delivered in Chicago that fall.    There is no evidence whatever upon this point, and the court is left to infer what the intention of the parties was at the time the coal was delivered on the vessel in the early part of November, 1872. The price was a very high price,—confessed y so; and perhaps the natural inference to be drawn from all the circumstances of the case is that the price was agreed to be paid on the understanding that the coal was to be delivered in Chicago that fall; and if that is so, the libelant is not entitled to the full amount of the price named in the bill of lading, because that would be an essential element entering into the contract.    It was so early in the fall that the expectation by

both parties probably was that the vessel would arrive in Chicago before navigation closed. Therefore, I hold that the decree of the district court in dismissing the libel was correct. But I also hold that the decree of the court in sustaining the cross-bill and awarding damages to the consignees, on the ground that the captain had been guilty of negligence in remaining at Port Huron, was incorrect, and must be reversed.

I have gone through all the testimony in this case, and I think the evidence is conclusive that the captain was guilty of no negligence in wintering his vessel at Port Huron. He did not arrive until November 29th, and there is no satisfactory evidence that any sailing vessel passed Port Huron after the arrival of the schooner American there. There is evidence, to which some weight must have been attached by the district court, that some sailing vessels passed after that time; and there was some testimony taken from the deputy collector of customs here about the arrival of vessels in Chicago; but there is no satisfactory evidence whatever, and I have examined the case with the utmost care to that view, upon which the court ought to rely, showing that any sailing vessel passed Port Huron after the arrival of the American there. But suppose it were so, and that vessels did pass Port Huron after the arrival of the American, and did arrive in Chicago that fall, that is not the rule by which this case is to be governed. It is not because of that the master of this schooner should be charged with negligence. The question is whether he was, in point of fact, guilty of negligence in wintering his schooner there. All the testimony concurs in this: that the fall was remarkably boisterous and rough, with a great deal of tempestuous weather. There is concurrent testimony on the part of masters of vessels that it would not have been prudent for the American to leave Port Huron after her arrival there, with a view of proceeding to Chicago, and the question is to be determined by the state of the case at the time; and if, acting as a reasonably-prudent man, in exercising that prudence he made a mistake, he is not to be visited with damages as if he had been guilty of negligence in not coming forward with his vessel to Chicago. The court is to look at the surrounding circumstances attending the arrival of the American at Port Huron, as developed by the testimony, to see whether it was a prudent act for the master to remain, or whether his duty to the consignees required him to take the risk which obviously existed, and push his vessel forward in the hope of arriving at Chicago during the fall. I think the testimony is satisfactory that it would have been an act of imprudence for him to attempt to reach Chicago, and there-

fore any decree which visits him with the consequences, as if he had been guilty of negligence, should not be sustained.

The result, therefore, will be that the decree of the district court dismissing the libel will be affirmed, and the decree of the district court sustaining the cross-bill will be reversed; and the costs must be apportioned.

After the foregoing opinion was given, by agreement the case was submitted to HARLAN, Justice, who, without giving any opinion, concurred in the decree of the circuit judge.