## PETRIE v. HELLER.[1]

*(District Court, S. D. New York. June 1, 1888.)*

1. SHIPPING—ACTION FOR FREIGHT—SET-OFF—DEMURRAGE PAID WHILE WAITING FOR CARGO.

   Demurrage paid by respondent to a vessel waiting for cargo to be brought to her by him, can be offset under his contract for its transportation by the libelant, against the freight due the latter only when the liability to such special damage is fully understood, and fairly within the contemplation of the parties.

2. SAME—TIME OF DELIVERY—BILL OF LADING—REASONABLE DILIGENCE.

   Libelant contracted to bring cargo in his canal-boat from New Haven, to be delivered to respondent on a schooner at Perth Amboy.    Through delay in the arrival of the canal-boat, respondent, under his contract with the schooner, was compelled to pay demurrage to the latter while she waited for it.    This he claimed to offset against libelant's freight, and this suit was thereupon brought to recover the full freight; libelant claiming that his contract was only to deliver as expeditiously as possible; respondent, that the cargo was to have been delivered on a day certain.    The bill of lading fixed no time for delivery of the cargo.    Bad weather caused libelant's delay. *Held*, that the burden of proof was on respondent to establish a positive day for the delivery of the cargo, and that, on the evidence, this had not been done.    As there was no proof of lack of reasonable diligence on libelant's part, *held*, that he was entitled to full freight.

3. SAME—PAROL EVIDENCE.

   Parol evidence cannot be used to insert in a bill of lading a warranty for the delivery of cargo at a particular day.

In Admiralty.    Libel for freight.

*Edward G. Davis*, for libelant.

*Hobbs & Gifford*, for respondents.

BROWN, J.    The above libel was filed to recover the freight for transporting 114 tons of tankage in November, 1887, from New Haven to the

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

schooner J. H. Parker, lying at Perth Amboy. The respondents claimed a deduction of $75, which they had been obliged to pay the Parker for the detention of that vessel while waiting for the tankage; and they alleged this to be a legal offset on account of the failure of the libelant to transport the tankage expeditiously, and to deliver the same to the schooner on the 9th of November, as they allege was agreed. The balance of freight was tendered and deposited in court. The original contract was made on the 3d of November, between the libelant and Mr. Schmaltz, who was acting on behalf of the respondents. There was no written memorandum of the contract. Mr. Schmaltz testifies that it was definitely agreed that the tankage should be delivered on board by the 9th. The libelant denies any such agreement. There is no doubt that the respondents desired to have the tankage delivered as soon as possible, and that Mr. Schmaltz so stated to the libelant. After the interview a written agreement was made by the respondents with the master of the schooner for the delivery of the tankage to the schooner by the 9th of November. The tankage was not, however, loaded at New Haven until the 11th, and was not delivered to the schooner until the 16th. At the time of the conversation with the libelant, Mr. Schmaltz understood that the canal-boat Bill Stanley, on which this tankage was to be brought from New Haven, was then loading with salt at Brooklyn, and that, after being loaded, she was to be towed to New Haven, unloaded, and then loaded with the tankage, and to be thence brought to Perth Amboy. The respondents were aware of the delays that ensued from time to time, and that the boat was not loaded at New Haven until the 11th, two days after the time they say it was agreed the tankage was to be delivered. The bill of lading, given upon the receipt of the tankage on the 11th, fixes no time for its delivery. Several interviews were had between Mr. Schmaltz and the libelant for the purpose of hurrying up the tankage, at some of which Mr. Schmaltz testifies that the libelant agreed to send a special tug to secure immediate delivery. The libelant testifies that all that he agreed to do was to hurry up the delivery as fast as possible.

The burden of proof is upon the respondents to establish a positive day for the delivery of the tankage. The circumstance that after the original bargain the respondents agreed to deliver to the schooner by the 9th, by their written contract with the latter, is doubtless entitled to some weight; but it is not at all conclusive. The time would have been sufficient had the weather been good, and Mr. Schmaltz doubtless supposed that the 9th was time enough. Had the agreement with the libelant been for a positive delivery on a day certain, it would have been more natural to have put the contract in writing. Several passages in the testimony as to the subsequent conversations are most compatible with the libelant's statement that his agreement was only to transport the tankage as soon as possible, without contracting positively for a fixed day of delivery. The tankage was not taken on board at New Haven until two days after the 9th. I do not find any statement that the libelant at that time was charged with breach of contract in not being loaded

by the 9th. If the contract had been for a positive delivery at Perth Amboy by the 9th, it would be remarkable that the boat should be loaded on the 11th, and nothing said before loading as to any claim of special damages for the delay. In loading on the 11th it is scarcely reasonable to suppose that the libelant understood he was loading under a positive contract to deliver on the 9th. It was not until several days afterwards that any claim for demurrage of the schooner while waiting for the tankage was first mentioned. Such damages, moreover, would not be the mere ordinary damage for the detention of such a cargo of tankage, and could only be recovered upon a special contract made in reference to the schooner, with a liability for such special damage understood, or fairly within the contemplation of the parties. See *The Parana*, 2 Prob. Div. 118; *The Giulio*, 34 Fed. Rep. 909. The proof on this point would be insufficient to sustain the special damages claimed. If the bill of lading signed by the master of the canal-boat on the shipment of the tankage were looked to as the final contract of transportation, parol evidence could not be resorted to, to ingraft upon it a guaranty or warranty for the delivery of the cargo at a particular day; since that would add materially to the written contract by throwing upon the libelant all the risks of the weather and of the navigation. The bill of lading cannot be thus altered by parol proof. *Rawson* v. *Lyon*, 23 Fed. Rep. 107; *Leduc* v. *Ward*, 20 Q. B. Div. 475; *The Sidonian*, 34 Fed. Rep. 805.

Aside from the bill of lading, however, I am not satisfied that the libelant made a positive contract to deliver on the 9th, or to do more than facilitate the delivery all in his power. During the 13 days that elapsed between the making of the contract and the actual delivery, the weather, for at least six days, was so bad as to make navigation on the sound in such boats improper and dangerous. Other tugs and tows were obliged to tie up for better weather. Several days were lost in getting away from New York. Had it been proved that any tow available to the libelant left New York for New Haven on Saturday evening, it would have been the libelant's duty to forward the boat by that tow. But his boat would have arrived at New Haven only one day earlier, and would not, probably, on her return have arrived in New York more than one day sooner. But there is no proof that any tow left upon that Saturday, and the evidence shows that the boat was forwarded to New Haven on the first fit day afterwards. In the absence of a specific contract to furnish a special tug, it was certainly not the duty of the libelant to incur that expense. The evidence shows that the cost of it would have exceeded the whole freight agreed to be paid. The libelant's denial of the alleged agreement to send such a tug is strengthened by its extreme improbability. As I cannot find a positive contract to deliver on the 9th November, and as the bill of lading fixes no particular day, and as the evidence does not establish any lack of reasonable diligence on the libelant's part in the transportation of the tankage, considering the rough weather, he is entitled to a decree for the full amount of the freight, with costs.