**GRAMMER S. S. CORPORATION v. JAMES RICHARDSON & SONS, Limited.**

**JAMES RICHARDSON & SONS, Limited, v. GRAMMER S. S. CORPORATION.**

No. 59.

Circuit Court of Appeals, Second Circuit.

Jan. 5, 1931.

Single & Single, of New York City, and Stanley & Gidley, of Buffalo, N. Y. (Forrest .E. Single and Horace T. Atkins, both of New York City, of counsel), for appellant.

Brown, Ely & Richards, of Buffalo, N. Y. (Thomas H. Garry and Frederick L. Leckie, both of Cleveland, Ohio, and John B. Richards, of Buffalo, N. Y., of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above).

The facts, as well as the applicable principles of law, are discussed in detail in the thorough and careful opinion of the District Judge, reported in 37 F.(2d) 366. Little need be added to what is there said.

The decree was awarded the shipowner upon the theory that it had fully performed its contract of carriage. This is challenged by appellant, first, upon the ground that the contract was misconstrued; and, second, that, even if the contract required only the prosecution of the voyage with due diligence, such diligence was lacking.

 This was not a contract to deliver at a stipulated date. Both the charters and the bills of lading merely specified delivery at Buffalo, time not expressed; and, while this did indeed mean delivery within a reasonable time, what is reasonable is to be construed in the light of the possibilities. Stoppage of the channel was one of these. See Braithewaite v. Power, 1 N. D. 455, 48 N. W. 354, 356; Allen v. Mercantile Mut. Ins. Co., 44 N. Y. 437, 443, 4 Am. Rep. 700; Murray v. Ætna Ins. Co., Fed. Cas. No. 9955 (C. C. N. D. Ill.); Parsons v. Hardy, 14 Wend. (N. Y.) 215, 28 Am. Dec. 521; 2 Williston, Contracts, § 1095. The law is firmly settled that a contract of affreightment which stipulates no date of delivery binds the shipowner only to prosecute the voyage with due diligence. Authorities for so well known a principle are scarcely needed, but see Dietrich v. U. S. S. B. Emergency Fleet Corp., 9 F.(2d) 733, 742 (C. C. A. 2); Carver, Carriage of Goods by Sea (7th Ed.) § 179.

Indeed, this is not denied; but it is urged that the high freight rate implies more, and justifies an inference that the carrier assumed the risk of delivery prior to the winter lay-up as a condition precedent to earning the agreed freight. Wilcox v. Five Hundred Tons of Coal, 14 F. 49 (C. C. N. D. Ill.), Holland v. Seven Hundred and Twenty-Five Tons of Coal, 36 F. 784 (D. C. E. D. Wis.), and Eddy v. Northern S. S. Co., 79 F. 361 (D. C. E. D. Mich.), are relied upon. The Wilcox Case contains a dictum to this effect; but the evidence which exists in the case at bar, explaining how the extra rate was fixed, did not apparently exist there. Upon it one may reach an opposite conclusion, for it dispels any inference that the high rate was to assure winter delivery. It was not; it was to reimburse the carrier for the anticipated added costs of winter carriage. Thus the construction of the contract remains as it would have been had the carriage been at the usual rates. We need not say whether we should agree with the Wilcox dictum had explanation of the high rate not been made. The Holland Case was decided upon negligence of the master in abandoning the voyage too soon. It cites the Wilcox Case only to say that the correctness of that decision need not be determined. Eddy v. Northern S. S. Co. merely decided that a vessel under charter for voyages during "the season" was not obliged to make a voyage after November 30th, on which date the season of navigation on Lake Superior was considered closed.

 No doubt the parties expected delivery before the close of navigation for the season, but expectation is not warranty. Heiskell v. Furness, Withy & Co., 4 F.(2d) 977 (C.

C. A. 2); Petroleum Export Corp. v. Kerr S. S. Co., 32 F.(2d) 969 (C. C. A. 9). Fawcett's assurance to Gauer that the ship would get through before navigation closed was merely an expression of opinion, but, had it been an express warranty, it would not serve appellant. Passing the question of Fawcett's authority, the written agreement was intended to be, and was, the final evidence, "integration," of the contract, and a prior verbal promise could not be brought forward to establish obligations different from those expressed in the writing. The Delaware, 14 Wall. 579, 606, 20 L. Ed. 779; Petrie v. Heller, 35 F. 310, 312 (D. C. S. D. N. Y.); Ryan v. Ohmer, 244 F. 31 (C. C. A. 2); 5 Wigmore, Evidence, § 2425. We conclude, as did the court below, that the contract bound the carrier only to use reasonable efforts to make timely delivery.

This brings us to appellant's attack upon the court's finding that due diligence was used. It is suggested, though the argument is not pressed with much vigor, that, while the Grammer was taking on her cargo at Ft. William, her owner should have employed tugs to course up and down the Neebish channels to keep the ice from forming a blockade. We need not say that efforts in advance of sailing to prevent the formation of an anticipated blockade are never required, though no authority for such a duty has been cited. It is sufficient to point out that it was not a failure to run tugs through the West Neebish channel which caused it to become blocked, but the illegal use of that channel by up-bound vessels on the 11th, 12th and 13th. For this the libelant was admittedly not responsible. While they remained stuck in the ice, nothing could be done, and, after they were freed, nothing was left undone which should have been done. The challenge to libelant's subsequent efforts to keep open the West Neebish amounts to nothing. The alleged error of Bailey in sending down the Eads on the 14th, without sending tugs ahead of her, does not seem to us to have been shown to be even an error of judgment, much less negligence. It was agreed to by a conference of unusually competent men, and, while the master of the Eads raised an objection at the outset, he apparently did not press it; and, in any event, we have no reason to suppose that he was right. The tugs having less water might have got through and yet the Eads might have stuck, as she did, on ice anchored on the bottom. Nor is it correct to say that efforts were abandoned on the 15th. The work done on the 17th was clearly a renewed attempt to get the Eads through, not merely an effort to get her into shape for a winter lay-up. When this failed, navigation was officially declared closed.

As to the Middle Neebish, there is likewise no reason to say that the efforts were not as great as the law required. The Harmonic tried this channel on the 15th. Concededly she was the best boat to make the attempt. Though she got through eventually, it was the opinion of every one except Hall and Flynn that a blunt nosed grain carrier could not have succeeded in following her. Flynn merely said that from the shore the ice at the dyke looked flatter after the Harmonic had gotten through. Hall was certainly not so well qualified as the captains whose opinions were opposed to his. Moreover, his testimony related to conditions on the 19th, after efforts had been abandoned and navigation declared closed. On the 17th, the experienced men in charge thought further efforts useless. They had done all that could be demanded; it was certainly not incumbent on the carriers to keep expensive tugs waiting idly about indefinitely on the chance that conditions might improve.

We have assumed that, if Captain Bailey gave up too soon, the libelant would be chargeable with his mistake, though this is by no means clear. Not being in a position to make effective efforts of its own, libelant was perhaps bound to avail itself of the efforts of the committee of carriers. It assented thereto and shared the expense. But there may well be doubt whether this made Bailey its agent, or, if he were, whether it would be liable for his errors These questions, however, we need not pass upon. Bailey was competent; the trial judge, who saw the witnesses, was satisfied with his defense of the measures he took and his reasons for abandoning further efforts. There is nothing to cast doubt on the correctness of the finding that libelant did all that the law required.

Decree affirmed.