## THE NADIA.[1]

### *(Circuit Court, E. D. Texas.* November, 1883.)

1. LIGHTERAGE SERVICE—BURDEN OF PROOF.

    Where a party seeks to recover for lighterage service upon a contract therefor, the burden of proof is upon him to excuse himself for the want of that dispatch and diligence which he was ordinarily bound to exercise.

2. CROSS-LIBEL.

    In an admiralty suit, respondents cannot be allowed damages in reconvention claimed in their answer, when no cross-libel has been filed, and no proper proceedings have been had on such a demand.

Admiralty Appeal.

The libel demands judgment for services, under contract, of libelant's tugs and barges in lightering over Galveston bar and to the wharves a part of the cargo of the Norwegian bark Nadia, consisting of 435 tons of railroad iron. A contract to perform such lighterage with the respondents, consignees of the cargo, at the rate of $1.96 per ton, is propounded. The respondents answer the libel by admitting a contract with libelant to perform the lighterage for the Nadia, but they allege that the contract called for proper dispatch, and that the agreed compensation was to be $1.65 per ton. And respondents allege that the Nadia was under charter-party, contracting for her discharge according to the custom of the port as speedily as possible, and providing for demurrage after the stipulated delays; and that the libelant did not perform the lighterage with fidelity, diligence, or proper dispatch, but did so unfaithfully, so carelessly, negligently, and badly, as to cause the unnecessary detention and delay of the

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

ship, and expose the respondents to charges and damages for demurrage for a much larger sum than the just price for the lighterage services, which sum respondents were compelled to and did pay. And respondents, alleging such damage, ask in reconvention judgment against libelant for $500.

After this answer libelant amends his libel, and, therein replying to the answer, alleges that the terms of the contract between the parties for the service were that libelant "would lighter said vessel with only such dispatch and diligence as he could from time to time consistently with his lighterage contracts previously made for lighterage with dispatch of other vessels arrived and to arrive," and that it was expressly stipulated that the libelant should be at full liberty to perform any and all other lighterage service for any and all other vessels which he had previously contracted with in preference to the Nadia, and that at the time he had contracts for the Cumberland and the Alvah; that under such contract he entered upon the service with all diligence and dispatch that the performance of his other contracts would allow; that soon after the Cumberland arrived and then the Alvah, and they were given the preference; that there was some bad weather, during which lighterage could not be performed, etc.; and concluding that said libelant was exclusively and necessarily employed in lightering said ships Cumberland and Alvah under his previous contracts during all the time that he was not engaged in lightering said Nadia, deducting Sundays and days of bad weather and rough seas. The original libel and the answer both show that the lighterage of the Nadia commenced on the twelfth of March and was protracted to the sixth of April.

The evidence shows that the Cumberland referred to was already in port and lighterage had been commenced on her cargo, when libelant, on the twelfth of March, commenced lightering the Nadia; that the Alvah arrived on the nineteenth of March and lighterage of her cargo was commenced by libelant on the twenty-first of March; that the Nadia arrived on the tenth of March, on which day libelant was notified, and she was ready to discharge on the eleventh of March. The evidence also shows that from the tenth of March to the sixth of April the weather and sea were suitable for lighterage, and that on every day but two and Sundays during that period lighterage was done either from the Nadia or some other vessel in the roads; also that the entire lighterage of the Nadia was done in parts of eight different days, and that if it had been done with customary dispatch it would not have taken over seven days, at longest.

*Albert N. Mills*, for libelant.

*George Mason*, for respondents.

PARDEE, J. From these facts it is easy to see that the Nadia was not lightered with proper dispatch, but, on the contrary, was so negligently, carelessly, and slothfully lightered as to justly entitle her owners to demurrage. Proper dispatch would have commenced the lighterage on the eleventh of March and concluded it on the nine-

teenth of March, allowing for one Sunday and one bad-weather day to intervene. It is therefore necessary to inquire, (1) what was the contract between the parties as to dispatch in lightering the Nadia? and (2) was the contract complied with by libelant?

On these questions the burden of proof is on the libelant; for, before he can recover for his lighterage services, he must excuse himself for the want of that dispatch and diligence which he was ordinarily bound to exercise. As to what was the contract we have only the testimony of libelant on the one side, and Mr. Lingham, one of the respondents, on the other. Capt. Fisher's evidence on the subject must be disregarded, for he is contradicted by the libelant, and by Vaughan and Lingham, as to the parties who made the contract, and by Lingham as to his presence when the contract was made, and by libelant and Lingham as to the details of the contract. He evidently was not present, and only knows what the contract was from what Heidenheimer told him. Vaughan, one of the respondents, admits that he only knows the details of the contract from what his partner, Lingham, told him. The libelant substantially swears to the contract as alleged in the amended libel. Lingham testifies on the subject as follows:

"It was agreed that the vessel should be lightered with due dispatch. At the time the contract was made, Mr. Heidenheimer, before concluding it, reminded me that he had to lighter the steamer Alvah under a contract made by his agents at Liverpool with Messrs. Vaughan Bros. & Co. of that city, with which latter contract Messrs. H. A. Vaughan & Co. had nothing to do, except as agents of Vaughan Bros. & Co., to see that it was carried out. I informed Mr. Heidenheimer then of the time the Alvah had sailed, and when she was due here, which would allow him nine running days in which to lighter the Nadia before the Alvah arrived, and that he would have ample time to finish lightering the Nadia, (which was then at the port of Galveston, and was ready to be lightered on the morning of March 11, 1881,) provided he would furnish his lighter daily. He then assented to my views as expressed, and agreed to undertake and complete the lighterage of the Nadia. It was understood that when the Alvah arrived Mr. Heidenheimer was to proceed to lighter that ship, which would require two lighters per day only, but it was also agreed that he should proceed with due dispatch and lighter the Nadia before the Alvah arrived, provided he had the time. I told him he would have, and this he did have."

This statement of the contract between the parties must be taken as the true one, because the burden of excusing want of diligence and dispatch is on the libelant, and because this statement is more consistent with business ability and fair dealing on the part of the consignees' agents than the extraordinary contract claimed by the libelant, which in effect subordinated the interests of the Nadia and the consignors of her cargo to the general interests of the libelant's lighterage business, and to the advantage of other ships to arrive. Besides, the libelant's sworn statements in the progress of the case have not been so consistent as to favorably affect the consideration of his evidence when in direct opposition to that of an equally good

witness in character and knowledge of the matters in question. In the sworn libel it is stated that the contract price for lighterage was $1.96 per ton. On the trial in the district court, libelant, in testifying, was uncertain as to the rate agreed upon, and admitted that it was $1.65 per ton. In his deposition since taken he is positive and certain that the rate agreed upon was $1.65 per ton, with a drawback of 10 cents per ton.

In the amended libel it is stated that when the contract for the Nadia was made, libelant was then engaged in lightering the Alvah, and that the Cumberland, under contract also with him, soon after arrived, while the fact is now conceded to be that it was the Cumberland that was here, and the Alvah did not arrive until after sufficient time had passed to have finished with the Nadia, had proper dispatch been used. There are other discrepancies in the sworn statements of libelant, and the matter is here referred to, not to reflect upon his integrity as a witness, but to point out that his memory is not so reliable but that he may be mistaken about the details of a contract entered into more than two years prior to the time of giving his evidence. That according to this contract there was not proper dispatch in lightering the Nadia is apparent from the facts heretofore set forth. This lack of dispatch resulted in damages to consignees, as they were compelled to pay therefor $760 demurrage and $181 for cablegrams. These damages respondents have a clear and just right to offset against the demand of libelant for lighterage, and it seems they more than absorb the whole of it. The lighterage at $1.65 per ton would amount to $717.75, some $42 less than respondents were mulcted in demurrage alone.

The respondents have claimed in their answer damages in reconvention over against libelant, but as they filed no cross-libel, and no proper proceedings have been had on such a demand, I do not see my way clear to make such allowance, although the proof may show a balance due them on the whole case.

Some evidence in the case has been taken in relation to a claimed custom in the port of Galveston for lighters to take out cotton and bring in iron or other goods, but as such alleged custom, if it exists, cannot affect the issues in this case, I have not found it necessary to consider such evidence.

I notice also, in the proceedings in this case, that the amended libel, although propounding important matters in the case, has never been answered; that the evidence adduced on the trial in the district court was not reduced to writing; and that on the trial in the court below a jury of 12 good and lawful men was impaneled and sworn to try the case, and that said jury returned a general verdict for the libelant for the sum of $717.75, upon which verdict the judgment below seems to have been entirely based.

As the case is presented in this court a decree should be entered for respondents dismissing the libel and amended libel with costs in both courts; and it is so ordered.