EGAN v. BARCLAY FIBRE CO.[1]

SMITH v. SAME.

(District Court, S. D. New York. May 7, 1894.)

1. DEMURRAGE—BILL OF LADING—DELIVERY "AS SOON AS POSSIBLE."

A provision in a bill of lading requiring delivery "as soon as possible" is equivalent to a provision for quick dispatch, and requires the consignee to make use of all means of discharge readily available, and does not admit of a detention of the vessel to suit the convenience or business purposes of consignor and consignee.

2. SAME—DISCHARGE AT CONSIGNEE'S CONVENIENCE—LIABILITY.

Where defendant had a slip, on each side of which were suitable places for discharge, and two of the boats of libelant E. arrived there to discharge at the same time, but defendant, for its convenience, allowed the discharge on one side of the slip only, *held*, that libelant was entitled to demurrage for the detention of his boats for any period over and above the time it would have taken them to discharge simultaneously on opposite sides of the slip; and a second libelant, S., whose boats arrived subsequently to E.'s, was *held* entitled to demurrage for the period after E.'s boats should have been unloaded, and before S.'s boats began to discharge.

These were two libels—one by John Egan, and the other by John A. Smith—against the Barclay Fibre Company, for demurrage for detention of libelant's canal boats on delivery of cargo.

T. Clement Campbell, for libelant.

Peter Cantine, for respondent.

BROWN, District Judge. The bills of lading required delivery of the cargo "as soon as possible." This is equivalent to a provision for quick dispatch in unloading, and required the consignee to make use of all the means of discharge that were readily available; it did not admit of a detention of the vessels for such a disposition of the cargo as merely suited the convenience, or the business purposes, of the consignor and consignee.

Each libelant had two canal boats loaded with wood. Egan's two boats arrived at Saugerties on the 29th of June. The defendant had a slip there in Esopus creek, and on each side of the slip were suitable places for the discharge of wood. Under such a stipulation in the bill of lading, I think it was the duty of the consignee to admit of the discharge of the two vessels at both places at the same time, on the two opposite sides of the slip; and to supply men enough to remove the wood as fast as it was put upon the wharf by the vessel's men. The defendant, for its convenience, allowed the discharge on one side of the slip only, where a car track could be made use of for removing the wood to a shed some five or six hundred feet distant; and the second boat had, therefore, to wait until the first was discharged.

The libelant chose to employ but four men to unload his wood. His witnesses testified that these were sufficient to remove the wood in two days. But what the men hired were capable of do-

ing, is not the question. The question is whether the defendant caused any further delay by not removing the wood as rapidly as the men employed by the libelant were prepared to remove it from the boat, and would have removed it, but for the defendant's delay. The evidence shows a little delay through imperfection in the track, and also in the changes for empty and loaded cars. The time that the four men employed by the libelant would take to remove the wood can be be arrived at best by looking at the current rate of wages, the amount which the men expected to earn, the amount they usually received per day, and the rate per cord at which they contracted to unload these boats. This evidence shows that from 30 to 40 cords per day is all that the four men expected to remove, or would ordinarily have removed without any delays, and consequently that nearly three days would be required for the unloading of each of Egan's boats, which had 110 cords each.

There was no delay in the preparations for unloading after the arrival of Egan's boats on Thursday, the 29th of June. Work was begun on Friday the 30th; on Saturday the men worked three-quarters of a day only. As July 2d was Sunday, and the 4th a holiday, three days for unloading 110 cords would carry the unloading of the first boat to the forenoon of the 5th. The deck load of the second boat being previously removed, her discharge was completed upon the 7th. The first boat should, therefore, have been fully discharged by the forenoon of Wednesday the 5th; and the other boat by the same time, on the opposite side of the creek. This libelant is, therefore, entitled to two days' demurrage on both boats, which I find to be of the value of $6 each per day, including the men, making $24, or with interest, $25.20.

Mr. Smith's two boats arrived with about 83 cords each on the 30th of June. The defendant is not responsible for the delay caused by the use of the wharf by Egan's boats up to the time when his two boats should have been discharged, viz., by noon of the 5th of July. Mr. Smith employed the four men previously employed by Egan, and began discharging on the 7th, as soon as Egan's boats were unloaded. Upon the rule above stated, each of these boats should have been discharged in two and a half days, on the opposite sides of the slip, and the discharge completed by the night of Friday the 7th. The discharge was not completed until the 13th. Smith is, therefore, entitled to six days' demurrage on his two boats, amounting, at the same rate, to $72, adding interest, $75.60.

Decrees may be entered accordingly, with costs.