### WILLISCROFT v. CARGO OF THE CYRENIAN.

(District Court, W. D. New York. May 11, 1903.)

No. 151.

1. SHIPPING—CHARTER—DEMURRAGE.

In the absence of a charter provision on the subject, to establish the liability of a charterer for demurrage on account of delay in loading or discharging, the owner has the burden of proving either that the vessel was not loaded or discharged in accordance with the custom of the port, or that there was unnecessary and unreasonable delay through the fault or negligence of the charterer.

2. SAME—DELAY IN LOADING—AWAITING TURN.

A charterer is not liable for demurrage because seven days elapsed between the time the vessel was ready to load with lumber and the completion of her loading, the usual time for loading being from three to four days, where the delay was due to the fact that she was required to wait her turn in accordance with the custom of the port and the scarcity of labor, all the available men at the port being engaged in loading the vessels ahead of her.

3. SAME—DELAY IN DISCHARGING—INSUFFICIENT DOCKAGE.

A vessel under charter has the right to expect the charterer to provide sufficient dock room to enable her cargo to be discharged promptly and continuously, in the absence of any extraordinary conditions, and the charterer is liable for demurrage where there is delay through his neglect to provide such dockage.

---

¶ 1. Demurrage, see notes to Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.

In Admiralty. Suit in rem against cargo to recover demurrage.

Harvey L. Brown, for libelant.

Rogers, Locke & Milburn (Edward W. Hamilton, of counsel), for respondents.

HAZEL, District Judge. This is a proceeding in rem for demurrage against 399,431 feet of lumber, the cargo of the barge Cyrenian. It is asserted by the libelant, owner of the chartered vessel, that he was unreasonably delayed in loading the cargo at French River, Ontario, the port of shipment, and also in unloading at the dock of the consignee at Buffalo, N. Y., the port of discharge. No stipulation for delay or the number of days allowed for loading and unloading is contained in the bill of lading or contract of shipment. Under such circumstances, it is the law that the consignee is liable for unnecessary or unreasonable delay either in loading the ship or discharging cargo at the port of delivery. Liability is sought to be established upon a custom which was violated, and upon the failure of respondents to exercise reasonable diligence at the ports of loading and unloading. Inasmuch as the contract of affreightment is silent on the subject of such delay, the libelant assumes the burden of proof upon two propositions, either of which, when proven, establishes his cause of action: First, he must show that the consignee was negligent in promptly loading or unloading the chartered vessel; or, second, that the consignee unreasonably violated the period allowed for loading or unloading in the ordinary course of business of the port where the cargo was taken on or delivered. Riley v. A Cargo of Iron Pipes (D. C.) 40 Fed. 605. A vessel owner, in the absence of an agreement covering demurrage, may legally assume that the chartered ship will be loaded and unloaded in accordance with the prevailing custom of the port, and with such reasonable promptitude as the situation and circumstances allow. This rule is, by implication or tacit concurrence, a part of the agreement between the owner of the ship and the owner or consignee of the cargo. Empire Transp. Co. v. Phila. & R. Co., 77 Fed. 920, 23 C. C. A. 564, 35 L. R. A. 623, and cases cited.

Wherein have the consignees omitted any obligation legally imposed upon them? The claim of libelant is based upon the following facts: The Cyrenian, having been chartered by telegraph, immediately proceeded to the Canadian port of French River, arriving there November 22, 1902. She was then ready to receive the lumber cargo over her rail. Loading was not commenced until November 26th, and was completed on December 1st. The usual time occupied in loading a vessel with the capacity of the Cyrenian at that port is three to four days. She was approximately delayed five days. The detention upon loading was not unreasonable, nor could it have been avoided by the exercise of ordinary diligence by the respondents. The proofs shows that, when the Cyrenian reported her arrival at French River, three vessels were in port awaiting cargoes of lumber at or near the dock where the Cyrenian was to load. It is the universal maritime custom for vessels under such circumstances to load in turn. The loading of the Cyrenian commenced in turn, and with

reasonable dispatch. I am unable to perceive why fault should be attributed to the claimants. The evidence quite fully shows that whatever detention occurred at French River was principally owing to the scarcity of labor, as the available labor was utilized by the vessels in turn. The libelant contends that the failure of the claimants to provide an additional inspector for the lumber was the proximate cause of the delay. I am inclined to the belief, however, that the scarcity of labor was the primary cause of the detention. The Cyrenian has no cause for complaint on account of the enforcement of this custom. It certainly would have been unreasonable to require that the labor which was accessible, or even a portion of it, should be taken from the vessels in port ahead of the Cyrenian to expedite her loading. The respondents were not to blame for the dearth of labor. The port of French River is merely a lumber camp, many miles removed from railroad or telegraph facilities. It is an isolated lumber shipping port, having a sawmill and dock and a limited number of workmen—no more than sufficient to expeditiously load two vessels at the same time. It is practically conceded that all the available labor was hired to load the vessels in port. As the port was actually known to the owner of the Cyrenian, it may be assumed that he knew the prevailing local conditions. He was not justified in assuming when he accepted the charter that other vessels might not be in port. He might have guarded against the loss through detention by contract of affreightment. It was not improbable that other vessels might be in port on his arrival, and delay under such circumstance would necessarily follow. An additional number of stevedores could not have been employed. The shipper does not appear to have had any knowledge of the congested condition of the port, nor, indeed, of any scarcity of men to seasonably effect prompt loading. No negligence is therefore found against the respondents because of any detention at the port of French River. The Cyrenian arrived at the port of discharge on Saturday evening, December 5, 1902. Unloading was not commenced until Monday afternoon, and continued as long as there was available dockage. The libelant claims that the discharge was delayed because of failure to unload with reasonable promptitude. The usage of the port, as established on the hearing, justifies the finding that a vessel carrying lumber must be given dockage within 24 hours after arrival. A reasonable time for the discharge of 400,000 feet of lumber from a vessel of the dimensions of the Cyrenian is approximately two days. The rapidity with which a cargo of lumber is discharged depends upon labor conditions, elements, dockage facilities, and the order of precedence in which the vessel is by custom entitled to be unloaded. A reasonable time, therefore, embraces conditions and elements which tend to vary and modify the prevailing custom of the port. The witness Etzredt, who was in charge of the stevedores, testifies that on Monday there was a space on the dock where the lumber was to be piled for only 160,000 feet. He commenced to unload with 18 stevedores, but was obliged to reduce their number on Tuesday morning to 8, because of insufficient dockage. Unfavorable weather, which the witness described as "an awfully blustering day," prevented work on Wednesday. On Thursday, abun-

dant dockage having been provided, the stevedores again began to unload, completing their undertaking on Friday afternoon. The preponderance of evidence shows that there was a delay of one and a half days through failure of the consignee to supply the necessary dockage. This hindered the work of the stevedores. Had sufficient space for unloading been promptly furnished, either before the work commenced or as it progressed, the barge would have been unloaded Monday afternoon and Tuesday. The vessel had the right to assume that dockage for piling the lumber would be supplied with reasonable promptitude, and that when unloading commenced the lumber would be discharged continuously, and with customary dispatch, unless prevented by extraordinary conditions. The consignee must be held to pay demurrage for one and one-half days for unreasonable detention.

On the facts proved the lien for demurrage has never been waived or abandoned. Witness Williscroft, the owner of the chartered ship, testifies, and it is not controverted, that the value of a barge such as the Cyrenian at the period of time when she was detained at the port of delivery is from $50 to $60 per day. The respondents, for the reasons stated, will be held responsible for the sum of $75, which I deem to be the measure of damages sustained on account of the detention.