## THE HEATHDENE.

### MILBURN v. FEDERAL SUGAR REFINING CO.

(District Court, S. D. New York. June 28, 1907.)

SHIPPING—DELAY IN DISCHARGE CAUSED BY INSUFFICIENT STEAM.

A vessel under contract requiring reasonable dispatch is liable to a consignee for demurrage paid by him to another vessel by reason of the occupation of a wharf by the first for an excessive time in discharging, where the delay was caused by the failure of such vessel to furnish sufficient steam for the winches to make the discharge with reasonable dispatch. Such vessel is also liable for an extra sum which the consignee was compelled to pay to the stevedores by reason of the delay so caused.

[Ed. Note.—Quick dispatch, see note to 14 C. C. A. 657; 21 C. C. A. 342.]

In Admiralty. Suit to recover balance of freight.

Convers & Kirlin, for libellant.
Ernest A. Bigelow, for respondent.

ADAMS, District Judge. The libellant here, W. J. Milburn, as master of the steamship Heathdene, brought an action against the Federal Sugar Refining Company to recover a balance of freight claimed to be due the libellant of $1,000, on a cargo of sugar brought to Yonkers, New York, on the said steamship. The whole freight from Java was £6591.12.7 all of which was paid excepting the sum here in dispute, payment of which is resisted on the ground that the steamer did not supply sufficient steam to discharge the cargo as fast as it should by

reason of which the respondent was damaged to the extent of $951.27 which it retains to cover its damages. The matter was referred by consent to a commissioner who reported that the steamer did not supply sufficient steam. The deficiency of steam caused damages in two respects, viz:

1. $846.27 demurrage claimed to have been paid to the steamship Yarborough because the respondent was unable to furnish her with a dock as soon as would have been possible if the Heathdene had been discharged sooner.

2. $105. the amount of the bill of the boss stevedore for the time lost by his men in consequence of the slow delivery.

The commissioner reported that the libellant was entitled to recover $895. being $1000. unpaid freight less the stevedore's bill of $105. and both parties excepted.

I. With respect to the demurrage item the commissioner said, inter alia:

"There being no custom, the law implied an agreement to unload with reasonable diligence under all the circumstances. Empire Transp. Co. v. Phila. & R. Coal Co., 77 Fed. 919, 23 C. C. A. 564, 35 L. R. A. 623, and cases there cited; Marshall v. McNear (D. C.) 121 Fed. 428; Williscroft v. Cargo, etc. (D. C.) 123 Fed. 169.

Cases in which questions of this character are presented are almost invariably suits for demurrage, brought on behalf of the vessel, and no instance has been brought to my attention where the claim was asserted against the vessel; but the obligation to use reasonable diligence must be mutual, and if there is an absence of such diligence through the fault of the vessel, she should respond in damages. I think that it would have been far from burdensome to require the Heathdene to discharge an average of 1,000 tons a day from three hatches, and that she could easily have done so if ample steam had been supplied. I consider that under the charter she was bound to furnish as much steam as was required to drive the winches effectively in discharging according to the customary method at the place of discharge. The captain's testimony, above referred to, shows that she had previously discharged over 1,900 tons of coal a day, and loaded over 2,100 tons, at three hatches, and it would seem to have been a comparatively easy matter to discharge 1,000 tons of sugar from the same number of hatches, especially when a speedier method was adopted. For some unexplained reason the donkey boiler could not supply the necessary steam, and the captain and engineer were unable or unwilling to make up the deficiency from the main boilers.

On the 18th of October, respondent wrote libellant that because of the Heathdene's failure to supply sufficient steam to discharge her cargo properly, respondent would hold libellant for demurrage on the Yarborough, 'now awaiting orders, resulting from the above mentioned lack of steam,' and adding, 'Under ordinary conditions, the Heathdene should be finished by to-morrow evening, and we shall hold you for any demurrage incurred on the Yarborough after this time.' The following day, libellant acknowledged the receipt of this letter, laid the blame on the stevedores, and stated that he declined all responsibility for demurrage on the Yarborough. That vessel, also, carried a cargo of sugar from Java, under a charter to Maclaine, Watson & Co. of London, dated prior to the Heathdene's charter, and the bills of lading, which by their terms were made subject to the conditions of the charter, had been endorsed to respondent. Respondent, therefore, became liable to the Yarborough for demurrage according to the terms of that vessel's charter, which provided that the cargo should be 'discharged with the despatch customary at the port of destination' (Carver on Carriage by Sea, [4th Ed.] § 637, p. 771). But irrespective of this agreement, respondent was liable for demurrage, since there was no custom that a vessel should await her turn at the dock, and the Yarborough was entitled to a berth within 24

hours after entry at the custom house. Respondent put in evidence a bill which it paid to her agents. This bill was originally made out for 7 days' demurrage from October 17 to October 23 (when she took the berth previously occupied by the Heathdene), at £49.14.0, or $1,692.54 in U. S. money, and was subsequently reduced to $1,571.64 by deducting demurrage for half a day. There was a clause in the Yarborough's charter that 20 days' demurrage should be allowed, 'if required,' at 6d. per net register ton, and the bill was based upon this provision. On the bill is a memorandum that the Yarborough arrived the 14th, entered the 16th, and demurrage commenced the 17th. This is sustained by the testimony, and it is shown that there was no berth for her except that occupied by the Heathdene. Respondent rendered libellant a bill for 3½ of the 6½ days' demurrage paid the Yarborough. This apportionment was made on the basis of 1,000 tons a day as a fair rate of discharge for the Heathdene, and the amount billed against libellant was described as 'demurrage on S. S. Yarborough incurred through lack of steam furnished by S. S. Heathdene.' The question is whether demurrage of the Yarborough, caused by her exclusion from the berth by reason of the Heathdene's failure to discharge with due diligence, and paid by respondent under the bills of lading adopting the demurrage clause in the Yarborough's charter, is either fairly and reasonably to be considered as arising, according to the usual course of things, from the Heathdene's breach of contract, or is to be regarded as such damage as may be reasonably supposed to have entered into the contemplation of both parties, when the Heathdene's charter was made, as the probable result of such breach. Primrose v. Western Union Co., 154 U. S. 1, 29, 14 Sup. Ct. 1098, 38 L. Ed. 883. The latter principle, under which special damages are sometimes recoverable, cannot be considered as applicable, since it does not appear that it was ever known to the owners, charterer or master of the Heathdene that the Yarborough had been chartered under conditions which might or would bring her to the same berth at about the same time. Her charter provided that when loaded she should proceed to Port Said for orders to discharge at a port in the United Kingdom, 'or at Bordeaux or Hamburgh, or at an intermediate port, but excluding Rouen, or at Marseilles or Genoa, or to proceed, at Charterer's option, to Delaware Breakwater for orders to discharge at New York, Boston, Philadelphia or Baltimore.' Even notice acquired after the Heathdene's charter and before breach would be insufficient. Globe Refining Co. v. Landa Cotton Oil Co., 190 U. S. 540, 23 Sup. Ct. 754, 47 L. Ed. 1171. But it is contended that the Yarborough's demurrage was such damage as ordinarily and naturally flowed from the breach. It is argued with much force that a shipowner must know, or at least reasonably anticipate, that his is not the only vessel which will discharge at the dock to which she is consigned, and that until she leaves, the next ship cannot discharge, and he must also know or expect that if the other vessel is delayed by an unduly slow discharge of the vessel at the berth, the consignee will have to pay demurrage for the delay. In support of this, Welch, Perrin & Co. v. Anderson, 61 L. J. Q. B. 167, 7 Asp. M. C. 177 (Court of Appeal), and The Nadia (C. C.) 18 Fed. 729, are cited. In the first of these cases the defendants had agreed with plaintiff to have their ship ready at a certain dock, on a specified date, to receive a cargo of tiles, but the ship not being ready on the agreed date, the tiles remained aboard the railway trucks on which they had been transported, and the plaintiffs were obliged to pay the railway company for the detention of the trucks. The court held that the shipper could recover the amount of this payment from the shipowners, Lord Esher observing:

'It seems to me that the demurrage payable for the detention of these trucks was the natural, ordinary and reasonable consequence of the defendants' breach. They must have known that the tiles would have to be brought in vehicles of some kind or other, whether barges, carts or trucks. If they had been brought in barges, and the ship had not been ready, demurrage would obviously have had to be paid for the detention. * * * It was therefore a natural result of the defendants' breach of the contract that the trucks were detained and that the plaintiffs had to pay for the detention.'

In the other case cited (Circuit Court, on Appeal, E. D. Texas), which was a suit for lighterage, Judge Pardee allowed demurrage of a ship as a set-off

where the ship had been detained by libellant's tardy performance of an agreement with a cargo owner to lighter the cargo to the ship.

But I consider that I am bound by Judge Brown's view of the law in Petrie v. Heller (D. C.) 35 Fed. 310. That was a suit for freight, in which the respondent sought to offset demurrage paid by him to a schooner while she was waiting at Perth Amboy to receive a cargo of tankage which libellant had agreed to carry from New Haven and deliver to the schooner, the respondent claiming that the cargo should have been delivered to the schooner by a certain date under the agreement between him and the libellant. Judge Brown found that there was no agreement to deliver by the date claimed, and no lack of reasonable diligence in the transportation of the tankage from New Haven, and he disallowed the offset; but he added: 'Such damages, moreover, would not be the mere ordinary damage for the detention of such a cargo of tankage, and could only be recovered upon a special contract made in reference to the schooner, with a liability for such special damage understood, or fairly within the contemplation of the parties.' This, to be sure, is obiter, but as it is a clear and definite expression of the law which this court regarded as applicable to a situation analogous to that presented in this case, I think that I should follow it until the court holds otherwise."

The respondent excepted to this finding as follows:

"The respondent hereby excepts to so much of the report of the Commissioner made herein, and filed in the office of the Clerk of this Court on the 24th day of April, 1907, as holds that the libellant is entitled to recover $895.-00 with interest from November 1, 1905, basing its exception on the following grounds, that is to say:—

The demurrage paid by the respondent to the SS. 'Yarborough' was the natural and ordinary consequence of libellant's breach of the contract to give reasonable dispatch, or such as may be reasonably supposed to have been in the contemplation of the parties at the time of making the contract, and respondent should be allowed to set off the amount of said demurrage against libellant's claim for freight."

The question presented is whether under a contract requiring reasonable dispatch for a vessel, the consignee is precluded from recovering demurrage paid by it to another vessel by reason of the occupation of the first of a wharf for an excessive period.

The statement of the case by the commissioner, quoted above, seems to answer the question and it may be assumed that in the absence of the dictum by Judge Brown, he would have so decided. The court, however, is not bound by the judge's expression intended for the case then under consideration and I think that a consignee, for the reasons stated by the cases not followed by the commissioner, is entitled to recover the damages he has so paid. It does not seem just that money so paid out should not be recoverable from the cause thereof.

The exception is sustained.

II. The question of the stevedore's bill has I think been correctly decided and needs no more discussion than has been given to it by the commissioner. He said:

"As to the bill for the lost time of the stevedores. It is to be presumed the captain knew that a piling gang would have to be employed by the consignee, and that the probable consequences of the ship's failure to discharge with reasonable diligence would be to subject the consignee to the expense of the lost time of the men. The bill was concededly an estimate of the time, but the boss stevedore testified that he made the charge low, and I am satisfied it was fair. It was not paid, however, and still remained unpaid when the last hearing was had before me, April 5, 1905, nearly 18 months after it was incurred. According to respondent's testimony, it has a running account

with the stevedores, with periodical settlements, and since this claim was incurred there have been several of these settlements, from which the item was always reserved. All other debts arising out of the discharge of the Heathdene have been paid. Respondent's explanation of this situation is that the case was an unusual one, and the item was reserved until the liability for the disputed freight should be determined, to be then settled, along with the legal expenses. The testimony is positive that the item is to be paid, irrespective of the result of this litigation. Under these circumstances, there is no reason in my judgment why it should not be allowed. I think that the item is recoverable under the principle of The Giulio (D. C.) 34 Fed. 909."

The libellant excepted to this finding as follows:

"The libellant hereby excepts to so much of the Commissioner's Report as holds that the respondent is entitled to deduct from the freight due the libellant the sum of $105.00, the amount of the stevedore's bill.

The ground of the exception is that the stevedore's bill is not an item of damage sustained by the respondent in consequence of an act of neglect or default on the part of the libellant, and that the stevedore's charge is not a direct, proximate, natural, nor ordinary consequence of the failure of the vessel to supply steam in accordance with the standard adopted by commissioner."

The exception is overruled.