MILBURN v. FEDERAL SUGAR REFINING CO. OF YONKERS.

(Circuit Court of Appeals, Second Circuit. May 5, 1908.)

(No. 233.)

SHIPPING—DELAY IN DISCHARGING—FAULT OF VESSEL.

Delay in discharging through default of the vessel does not entitle the charterer or consignee to damages, in the absence of a contract for delivery by a particular day, but simply extends the time within which the discharge may be made without liability of the charterer or consignee for demurrage.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, § 436.

Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.]

Appeal from the District Court of the United States for the Southern District of New York.

For opinion below, see 155 Fed. 368.

Convers & Kirlin (Charles R. Hickox and Russell T. Mount, of counsel), for appellant.

E. A. Bigelow, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. This is a libel for unpaid freight to the amount of $1,000, against which the respondents allege a set-off amounting to $951.27, paying the balance into court. The respondents are the holders of the bill of lading of the entire cargo of sugar laden aboard the steamship Heathdene. The charter party, dated May 23, 1905, contains the following clause:

"Thirteen weather working days are to be allowed the said merchants for loading the said steamer at loading places and waiting for orders at the ports of call, and the cargo to be taken out according to custom of the place at the port of discharge, always afloat. * * * If required by charterers, 15 days on demurrage over and above the said laying days are to be allowed at four pence sterling per net register ton per running day. Should the vessel be detained by causes over which the charterers have no control. viz., quarantine, ice, hurricanes, blockade, clearing of the steamer after the last cargo is taken over, etc., no demurrage is to be charged and lay days not to count, and time used for shifting ports not to be counted in demurrage."

The bill of lading contains the following clause:

" * * * to discharge at a port as per charter party dated London, 23d May, 1905. * * * To be delivered in like good order and condition at the ordered port of discharge unto order or to order's assigns; he or they paying freight for the said goods and all conditions as per charter party above referred to."

We read the charter as fixing no lay days or demurrage for discharging; the only provision as to the discharge relating to the method, viz.:

" * * * The cargo to be taken out according to custom of the place at the port of discharge, always afloat."

It will make no difference whether we are right or wrong about this, because no testimony has been offered as to any customary rate of discharge in this port. A vessel, having brought a cargo to destination with no stipulation as to lay days or demurrage, performs her contract by discharging it in a safe place, if no one appears to claim it after a reasonable time. If a charterer or a consignee claims the cargo, the duty lies upon him to receive it within a reasonable time, and for any detention thereafter for any cause except the vessel's fault he must pay damages in the nature of demurrage. The obligation as to the time of discharge has always been treated as entirely on the charterer or consignee, probably because a vessel is always supposed to be anxious to deliver as soon as possible, so as to get a new freight. If the charterer or consignee receives the cargo in a reasonable time, he will be liable for nothing more than the original freight. If he exceeds that time, he will be liable for an extended freight in the form of damages in the nature of demurrage. The consequence of a delay in discharging due to the vessel's fault is simply to extend the time pro tanto within which the charterer or consignee may receive it, paying only the original freight.

In this case the court below has found the vessel did delay the discharge by failing to give the winches a sufficient supply of steam. As a consequence of this default the court charged her with the amount of $846.27 demurrage paid by the consignee to another vessel waiting for the berth occupied by the Heathdene, and the sum of $105, representing time of consignee's stevedores wasted by the slow discharge. These were in our opinion not the natural and proximate results of the vessel's delay in discharging; whereas the extension of the consignee's time to receive the cargo without liability to pay demurrage was. That obligations to receive the cargo, expressed or implied, are obligations of the charterer or consignee may be seen from Carver on Carriage by Sea, §§ 608, 615; Egan v. Barclay Fibre

Co. (D. C.) 61 Fed. 527; Empire Transportation Co. v. P. & R. Coal Co., 77 Fed. 919, 23 C. C. A. 564, 35 L. R. A. 623; Williscroft v. Cargo (D. C.) 123 Fed. 169.

If the contract, as is generally the case, fixes the lay days and demurrage, failure of the vessel to discharge promptly results in exactly the same consequence, viz., an extension of the lay days. Of course, if a vessel, having agreed to load or discharge a cargo on a day certain, fails to do so, the usual consequences of a breach of contract may be recovered. The question was discussed in Petrie v. Heller (D. C.) 35 Fed. 310.

The cases relied on by the court below are not cases of a vessel's delay in loading or discharging. In The Nadia the claim was not against the carrying vessel or her owners, but by the consignee of the cargo against a lighterman employed to receive it, through whose delay the consignee had to pay demurrage to the carrying vessel. Welsh v. Andersen, 7 Asp. Mar. Cas. 177, was an action at law to recover damages for breach of contract. The vessel, which was a general ship, had agreed to receive the plaintiff's consignment of cargo on a day fixed. Her failure to do so resulted in the plaintiff's having to pay demurrage to the railroad company for the cars in which the consignment was kept waiting. A verdict for plaintiff was sustained. The Giulio (D. C.) 34 Fed. 909, did not involve a delay due to the vessel in loading or discharging of cargo, but a delay in performing the voyage.

The decree is reversed, with costs.