MUNSON S. S. LINE v. MIRAMAR S. S. CO., Limited.

(Circuit Court of Appeals, Second Circuit. December 15, 1908.)

No. 102.

1. SHIPPING (§ 49*)—CONSTRUCTION OF CHARTER PARTY—DOCKING AND CLEANING VESSEL.

Under a provision in a time charter party of a steamer that she should be docked and cleaned "whenever charterer and master think necessary, but at least once in every six months," during which time the charter hire should be suspended, the charterer was entitled to have her docked at the expiration of six months from the last prior docking, although that was previous to the charter, and regardless of her actual condition, it being shown that such was the custom as to the construction of such provision; and where she was tendered for that purpose, but the owner refused to have her docked, the charterer is entitled to recover the charter hire paid during a reasonable time while she was out of service awaiting the performance of such covenant.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 195; Dec. Dig. § 49.*

Deductions and offsets from charter hire of vessel, see note to Tweedie Trading Co. v. George & Emery Co., 84 C. C. A. 254.]

2. SHIPPING (§ 51*)—CHARTERS—BREACH BY OWNER.

Where a time charter party for a steamer provided that her steam winches should be at the disposal of the charterer in loading and discharging, and that she should be in every way fitted for the service and so maintained during the charter, the charterer is entitled to recover damages for delay in loading or discharging caused by an insufficient supply of steam to operate the winches.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 203; Dec. Dig. § 51.*]

Appeal from the District Court of the United States for the Southern District of New York.

For opinion below, see 150 Fed. 437.

J. Parker Kirlin and Charles R. Hickox, for appellant.

Wheeler, Cortis & Haight (Charles S. Haight and John W. Griffin, of counsel), for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

WARD, Circuit Judge.   October 3, 1902, a charter party was executed at New York for the steamship Miramar for a term of six months from delivery, with an option to the charterers for a further period of six calendar months.   The charter party contained the following clause:

"(21) That as the steamer may be from time to time employed in tropical waters during the term of this charter, steamer is to be docked, bottom cleaned and painted whenever charterers and master think necessary, but at least once in every six months, and payment of the hire to be suspended until she is again in proper state for the service."

January 28, 1903, the steamship was delivered, and in July the charterer, the Munson Steamship Line, while she was discharging cargo, notified the owner that it would be required to dock her upon completion of the discharge, which the owner refused to do.   On July 11th, when the discharge was completed, the vessel was again tendered for docking, with the same result.   July 14th, after nearly three days of futile negotiation, during which the vessel lay idle, the charterer, without prejudice to its claim against the vessel and owner, sent her on another voyage.   Subsequently the charterer, having paid the charter hire in advance, began this action to recover, among other things, the proportion of charter hire paid by it during this delay.

The charter is filled in on a blank printed form of time charter applying to voyages in various waters, tropical and not tropical, and this particular clause is apparently intended for voyages of a longer period than six months involving tropical waters.   In case of voyages not involving tropical waters or for a term of less than six months the clause would probably be stricken out as inapplicable.   The language as to docking is absolute, requiring at least one docking every six months, whether it is needed or not (The Falls of Keltie v. U. S. & Australasia S. S. Co. [D. C.] 108 Fed. 416), and is entirely consistent with such a docking once every six months during the term of the charter.   The charterer, however, offered proof to the effect that this was a well-known clause, under which it was the practice to calculate the first period of six months for docking from the last docking of the vessel, whether it occurred during the term of the charter or before it.   The agents of the respondent in this port admitted the practice, and the respondent, which is a corporation of Great Britain, has neither taken proof to the contrary nor denied that it had knowledge of the usage.   Under these circumstances we feel compelled to hold that the parties contracted with reference to this usage and made the same a part of the charter party.   As the last docking of the Miramar before her delivery to the charterer was December 23, 1902, the charterer was clearly within its rights in demanding a docking July 11, 1903.

It appears that the vessel's bottom needed neither painting nor cleaning, because she made her best time in her last voyage under the charter, so that the charterer sustained no damage in respect to speed because of the failure to dock.   Still the owner's refusal was wrongful, and the charterer did pay for three days during which it ineffectually tried to induce the owner to perform its covenant.   The agreed hire is between the parties to the charter the natural measure

of damages caused by delay. The libel claimed $310.27, but the district judge allowed damages equal to charter hire for one day only, viz., $105.70, because he found that this would have been all the time necessary to dock the ship and clean and paint her bottom, had the owner performed its covenant. The language of the clause, "payment of the hire to be suspended until she is again in proper state for the service," we think, means that payment is to be suspended until the vessel is returned to the charterer after the docking, whether she needed cleaning and painting or not, and that the proper measure of damages was the hire paid for a reasonable time while the vessel lay idle during the charterer's effort to get the owner to perform its covenant. As, however, the libelant has not appealed, it must be content with the amount awarded.

The next claim is for time lost in discharging a cargo of coal at Matanzas in May and a cargo of sugar at New York in June, because of an insufficient supply of steam for the winches. The charter party provided that the vessel on her delivery should be tight, staunch, strong, and in every way fitted for the service, and to be so maintained during the continuation of the charter party, and also (clause 1):

"That the owner shall provide and pay for all provisions, wages, and consular shipping and discharging fees of the captain, officers, engineers, firemen and crew, shall pay for the insurance of the vessel, also for all the cabin, deck, engine room, and other necessary stores, and maintain her in a thoroughly efficient state in hull and machinery for and during the service."

Under these provisions the respondent was bound to keep the winches in every way fitted for the service, and would be liable in damages for failure to do so. The district judge found that the power of the winches was insufficient both at Matanzas and at New York, and there was testimony to support this finding. Damages so caused are not susceptible of very satisfactory measurement. He allowed the libelant a sum equivalent to charter hire for the time used in excess of what would have been needed if the winches had been maintained in every way fitted for the service, and we are not disposed to disturb this finding.

The respondent claims that clause 15 of the charter party defines the only cases in which charter hire is to be suspended (The Santona [D. C.] 152 Fed. 516), and that there can be no recovery; this claim not being covered by it. The clause is as follows:

"That in the event of loss of time from deficiency of men or stores, breakdown of machinery, stranding, fire, or damage preventing the working of the vessel for more than 24 running hours, the payment of the hire shall cease until she be again in an efficient state to resume her service; but should she, in consequence, put into any port, other than that to which she is bound, the port charges and pilotages at such port shall be borne by the steamer's owners; but should the vessel be driven into port or to anchorage by stress of weather, or from any accident to the cargo, such detention or loss of time shall be at the charterer's risk and expense."

But the libelant does not claim a suspension of charter hire, nor was there any breakdown of the machinery within that clause. The claim is for damages because the machinery was not kept fitted for the service, resulting in a delay in the delivery of the cargo and pay-

ment of additional charter hire, which the district judge adopted as the measure of the libelant's damage.

The district judge also correctly allowed the item of $14.40 paid by the charterer to stevedores for time lost while the winches failed to work. The case of Milburn v. Federal Sugar Refining Co. (C. C. A.) 161 Fed. 717, relied upon by respondent, arose out of a voyage charter for a lump sum, and has no application to a time charter.

Decree affirmed, with interest and costs.