### STEGER et al. v. ORTH.*

(Circuit Court of Appeals, Second Circuit. April 16, 1919.)

#### No. 73.

1. APPEAL AND ERROR ⬤107—RIGHT OF REVIEW—JUDGMENT ENTERED ON REPORT OF REFEREE.

Where an action at law is by consent referred to a referee "to hear and determine" in accordance with the New York statute, it is the practice of the federal court to make an order for judgment on the referee's report; but such order is pro forma only, and the fact that the judgment is entered by the clerk without an order does not deprive the defeated party of the right to have the same reviewed on error.

2. SHIPPING ⬤39—CHARTERS—EXPIRATION—FAILURE TO LOAD WITHIN LAY DAYS.

A charter does not terminate at the expiration of the lay days for loading because loading has not then begun; but where the agreement is to load at a certain rate and thereafter pay demurrage, the ship must wait thereafter for a reasonable time, the demurrage being the agreed compensation.

3. DAMAGES ⬤62(4)—BREACH OF CHARTER—MITIGATION OF DAMAGES.

To get another cargo as good as can be obtained and as quickly as is reasonably possible is the extreme measure of a shipowner's obligation to mitigate damages on notice by the charterer that he will not load.

4. SHIPPING ⬤52—BREACH OF CHARTER—MITIGATION OF DAMAGES.

Where a charterer refuses to load the cargo contracted for, the owner is under no obligation to accept a different cargo from him on different terms.

5. SHIPPING ⬤183—DEMURRAGE—INTEREST.

Interest is allowable on demurrage based on charter party agreement, whatever the form of action.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by Mountford S. Orth against Edward D. Steger and others. Judgment for plaintiff, and defendants bring error. Affirmed.

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Certiorari denied 250 U. S. ——, 40 Sup. Ct. 11, 64 L. Ed. ——.

Addison S. Pratt, of New York City, for plaintiffs in error.·

Alfred S. Barnard, of New York City, for defendant in error.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge. A motion to dismiss the writ or affirm the judgment must be disposed of before considering the merits. The substance of argument is that,.owing to procedural defects, we are without power to do more than grant the motion.

[1] The action is at law, and as soon as issue was joined the case was referred to a referee "to hear and determine," by an order duly entered in the court below on the written consent of the parties. This method of trial needs no explanation to a practitioner under the New York Code of Civil Procedure. . Plaintiff below (defendant in error) prevailed before the referee, upon whose report judgment was entered by the clerk in strict conformity with state practice.

It is now said that such a judgment is not reviewable in this or any other. federal court, because the findings of fact and conclusions of law upon which the judgment rests were not adopted by the court below, nor did that court by any explicit order, made after the referee had submitted his report, direct the entry of the judgment complained of. For this doctrine it is sufficient to refer to Boogher v. New York, etc., Co., 103 U. S. 90, 26 L. Ed. 310.

It is true that the practice pursued in entering this judgment was erroneous, and it may be noted that the defendant in error presumably entered it; i. e., the same party who now moves to dismiss.

The question of adjusting trials before consent referees (common in many states of the Union), not only with R. S. § 914 (Comp. St. § 1537), and R. S. §§ 649 and 700 (Comp. St. §§ 1587, 1668), but also with the legislation creating and regulating the Circuit Courts of Appeal, is not new. The Fourth circuit, in Swift v. Jones, 145 Fed. 489, 76 C. C. A. 253, held that such method of trial was or ought to be unknown to the federal court; but in Tiernan v. Chicago Life, etc., Co., 214 Fed. 241, 131 C. C. A. 284, and Philadelphia, etc., Co. v. Fechheimer, 220 Fed. 408, 136 C. C. A. 25, Ann. Cas. 1917D, 64, the Eighth and Sixth circuits substantially held that, if the court approved or adopted the findings and conclusions of the referee, a judgment so obtained and entered was subject to review in the same manner as are judgments founded upon findings by the judge after trial of a common-law action with jury duly waived in writing.

This opinion and the practice resulting therefrom has long obtained in this circuit. The method of transforming the referee's findings into the action of the court and making the judgment recommended by the referee a judgment directed by the judge has not always been the same. Sometimes a motion for a new trial has been made; sometimes judgment has been applied for on the referee's report; sometimes two orders, one denying a new trial and the other directing judgment, have been entered.[1]

---

[1] See the remarks of the court in Parker v. Ogdensburgh, etc., Co., 79 Fed. 817, —— C. C. A. ——; while the records in David Lupton's, etc., Co. v. Automobile Club, 225 U. S. 489, 32 Sup. Ct. 711, 56 L. Ed. 1177, Ann. Cas. 1914A, 699. and Homer Ramsdell Co. v. Compagnie Generale, 182 U. S. 406, 21 Sup. Ct. 831, 45 L. Ed. 1155, will ·exhibit the practice of this circuit and its variations.

But this procedure is merely formal, and how thoroughly it is no more than a method of insuring to the party defeated before the referee that right of appeal which he never expected or intended to surrender appears in the opinion of Lacombe, J., in Kilduff v. Roebling's, etc., Co., 150 Fed. 240. That learned judge said:

"Although it is the practice here to make an order for judgment upon the report of the referee, instead of allowing the clerk to enter judgment without direction of the court, such order is pro forma only. The court will not undertake to modify or review the conclusions of law any more than it would the findings of fact. Indeed, the very object of a reference is to relieve the judge at circuit from considering or passing upon any of the questions which have to be determined in arriving at the final conclusion, which is to be embodied in the judgment."

What, therefore, should have been done was to procure a formal order, signed as of course, directing the clerk to enter the very judgment that was entered. But this mistake could have been corrected any time within the term of entry of judgment or any lawful extension thereof. The mistake was as much that of the defendant below as of the plaintiff, and we do not think that defendant in error can be heard to make the objection now.

In Newcomb v. Wood, 97 U. S. 581, 24 L. Ed. 1085, an action at law had been referred (in the United States Circuit Court) to several arbitrators pursuant to the practice of the state of Ohio.

"Two of the three referees only signed the award, but the attention of the court was not called to the fact when the report was confirmed, and judgment was entered. The omission was amendable, and non constat but that the amendment could and would have been made, if the objection had been suggested. It would be fair neither to the court nor to the other party to permit the objection to be raised here for the first time. Under the circumstances, it must be held to have been conclusively waived."

In that case it was the plaintiff in error who sought to insist upon the proposition that the judgment under review was a nullity; in this case it is the defendant in error who asserts what is practically the same thing. The distinction does not entail a difference, and for the reason above quoted we decline to entertain the motion to dismiss.

The record at bar contains no bill of exceptions, nor is any of the evidence even sought to be presented. Our duties, therefore, are limited to the inquiry as to whether the referee's findings of fact support his conclusions of law and the judgment following thereupon. Hudson River, etc., Co. v. Warner, 99 Fed. 187, 39 C. C. A. 452. This measure of investigation may be obtained without a bill of exceptions (Flagler v. Kidd, 78 Fed. 341, 24 C. C. A. 123); nor will it be necessary to advert to the pleadings, which (on both sides) were by formal order amended during the course of the trial "to conform to the proof," which proof or evidence is not before us.

It is not thought necessary even to mention most of the assignments of error, nor to consider all the propositions of the briefs, after consideration of which we think the material points are as follows:

Defendants below (hereinafter called Steger) had toward the close of April, 1915, a contract with the republic of France to deliver at one or more of sundry cities in France a large quantity of baled and pressed hay to be shipped from either Galveston or Texas City, Tex.

Steger made a contract with a corporation to transport said hay, and plaintiff below (Orth) guaranteed the performance of said corporate contract, both as originally made and subsequently modified. Later Orth became the assignee of this corporate contractor, and he may for all purposes be spoken of as if he had originally made the agreements out of which this litigation arose.

Orth furnished ships to carry Steger's hay, but it was specifically found by the referee that he did not furnish any of the vessels in respect of which claims are advanced in this action under or pursuant to either the original contract above referred to or any other written agreement. On the contrary, by parol, the four steamships which ultimately carried a large portion of the hay were chartered to Steger, three of them on June 22, 1915, and the fourth, the Benwood, at some time prior to June 24th.

Steger's contract with the French government provided that the last of the hay should be shipped from America before July 20, 1915. On July 11, 1915, the Benwood and another steamer called the Aagot arrived at Galveston in the performance of Orth's parol charter arrangements with Steger.

The rate of loading was admittedly to be "700 tons per day." Whether this meant that number of tons per day for each steamer on the berth, or said number of tons to be divided among all the steamers that might be simultaneously loading, was a mooted question at the trial. As to which was the correct interpretation we express no opinion, for the referee adopted the latter contention, which was naturally that of Steger, and he cannot now complain of it. As matter of fact, the Aagot, which arrived about an hour ahead of the Benwood, was loaded first, and Steger made no attempt to put anything on the Benwood until after the Aagot's loading was complete.

The Aagot was loaded on July 30th, whereupon Orth refused to let her sail unless Steger instantly settled certain demands in respect of not only the Aagot, but the Benwood, and still another steamer. This contest was settled by agreement, but not until August 13th, when the Aagot sailed. In the meantime, and on August 7th, Steger notified Orth that no hay would be furnished for the Benwood. Subsequently the steamer provided herself with a cargo of staves, and defendants filled up the steamer with a comparatively small lot of hay. With this cargo she sailed for France in September, and her hay was delivered and received under Steger's contract with the French government. It is specifically found by the referee that—

"It is not established by the evidence that it was impossible for [Steger] to supply a cargo of hay for the Benwood; * * * the utmost that can be inferred is that to have obtained hay in order to load the Benwood within a reasonable period after her arrival would have been expensive, and probably would have cost defendant in demurrage a large sum of money."

The large judgment now complained of, and rendered in favor of Orth and against Steger, consists (so far as it is necessary to specify) of (1) damages for breach of contract to load hay on the Benwood, and (2) demurrage on the Benwood and other steamers; demurrage being computed after lay days at the rate of one for 700 tons of cargo-carrying capacity.

We notice the following alleged errors urged by Steger: (a) The charter of the Benwood was dependent on and collateral to Steger's contract with the French government. (b) The charter of the Benwood expired by limitation with the expiration of her lay days, calculated as above, viz. July 27th. (c) Orth's losses on the Benwood were due to his neglect of the duty imposed by law to mitigate damages by seeking other employment for his steamer. (d) Orth's conduct in refusing to let the Aagot sail, until his demands in respect of other steamers were satisfied, operated as a release of Steger from further liability in respect of the Benwood's charter. (e) Interest was not allowable upon the items constituting the principal of Orth's judgment below.

(a) It is argued under this head that because Steger had agreed to ship the last of his hay by July 20th, and by that date had put nothing on board the Benwood, he was therefore relieved of further dealings with that steamer.

This singular contention may be disposed of by pointing out that it is inconsistent with the admitted dealings between the parties hereto both before and after July 20th; as is said by the referee, the parties "apparently assumed, what appeared to be the fact, that the French government would not refuse to accept delivery of hay shipped after July 20th."

But such a contention as this can rarely rest merely upon a reading of certain papers, and when (as here) the agreement regarding the Benwood was in parol, it effectively disposes of the contention to point out that it has no finding of fact made by the referee upon which to rest.

It may be further noted that one of Steger's own requests to find was apparently intended to cover this point, and was refused by the referee. This fact is noted, to disapprove of the practice of burdening a record with such declined findings. When we have no power to do more than ascertain whether the judgment is supported by that which was found, we are not interested or concerned with what the referee did not find. Therefore such matters ought not to be inserted in the record.

[2] (b) It is reported as a fact that Steger did not, "in the negotiations which preceded the final termination of the [Benwood's] contract, take the ground that the contract was broken when the lay days expired; * * * up to August 6th [2] [Steger] claimed to control the Benwood, and had the right to load her with either hay or staves."

Under this finding of fact the contention now made is not open to plaintiff in error, but as matter of law it is wrong. It would indeed be a singular construction of so well-known a document as a charter party to hold that the charter necessarily terminates with the expiration of lay days. Doubtless an agreement may be made in such terms that, if no cargo is furnished before the expiration of lay days, the shipowner may cancel and seek other business. Where the agreement is to load at a certain rate and thereafter pay demurrage, demurrage

[2] (Note.—This date is an obvious clerical error for August 7th).

is the agreed compensation for the use of the ship for a reasonable time after the expected period of her loading is completed. For such reasonable time the ship must wait. Wilson v. Thoresen's Linie, [1910] 2 K. B. 405. Cf. the discussion of the relation of charterers and consignee in Milburn v. Federal, etc., Co., 161 Fed. 717, 88 C. C. A. 577.

[3] (c) The duty of a plaintiff who has been injured by a defendant, whether through tort or violation of contract, to mitigate or minimize damages, is not doubted. But what are reasonable and proper efforts in respect of such mitigation present nearly always (and certainly in this case) a question of fact; and here plaintiffs in error. are concluded by the findings below above cited, and the further finding that—

"There was no unreasonable delay on the part of [Orth] in securing a cargo for the Benwood after receiving [Steger's] notice that they would not supply hay for that vessel."

To get another cargo, as good a cargo as they could, and as quickly as was reasonably possible, was the extreme measure of the carrier's obligation to mitigate damages.

[4] It is specifically urged that Steger offered in substance to put on the Benwood a cargo which would not pay as large a freight as the hay, and then to make good the difference between such cargo and a hay cargo. It is admitted that on the hay cargo, as per contract, Steger was obliged to pay freight in advance; he refused to pay the equivalent freight in advance. This offer was made before August 7th. We entirely agree with the referee that such an offer (as matter of law) Orth was under no obligation to accept, whether it be called in mitigation of damages or substitution of occupation.

(d) Orth's conduct in respect to the Aagot's sailing was indefensible. The referee so found. Orth thereby subjected himself to some losses, which according to the findings below he. must bear himself. But the charter of the Benwood was a separate and independent agreement. When Orth refused to let the Aagot sail, the Benwood was awaiting her turn to load, and we fail to discover in any fact reported to us any connection between what Orth did about the Aagot and damages for a proven, if not admitted, breach of the Benwood's charter on August 7, 1915.

[5] (e) However interesting may be the question of interest upon unliquidated damages, it is not open for discussion to these plaintiffs in error; it being specifically reported to us that interest was computed on items both of damages and demurrage by stipulation.

In respect of demurrage, even if there were no stipulation, interest should have been computed under our decision in Milburn v. 36,000 Boxes, 57 Fed. 236, 6 C. C. A. 317. That decision was in a cause promoted in admiralty, but the form of the action makes no difference. Interest is allowable upon demurrage based on charter party agreement.

Judgment affirmed, with costs.