## HASHIMOTO v. AMERICAN UNION LINE, Inc.

(District Court, S. D. New York. February, 1921.)

Shipping ⟚43—Owner held liable to charterer for failure to maintain efficient equipment.

Under a provision of the charter party requiring the owner to provide the necessary equipment for the proper and efficient working of the vessel, delay caused by the intentional or negligent failure of the master to repair or replace a broken winch *held* chargeable to the owner.

At Law. Action by Hashimoto, Esq., against the American Union Line, Inc. Jury waived. Judgment for plaintiff, less items of counterclaim allowed.

Judgment affirmed 280 Fed. 750.

Haight, Sandford & Smith, of New York City, for plaintiff.

Engel Bros., of New York City, for defendant.

MAYER, District Judge. The court has found as a fact that the Shigizan Maru was delayed in Genoa during March and April, 1917, for 1½ days, and that this delay was caused by a broken winch on the

port side of No. 3 hatch. The court has further found as a fact, in accordance with the stipulation of counsel, that the Shigizan Maru was delayed at Philadelphia in May, 1917, for one day and for the same reason. On the basis of these findings, it remains for the court to decide whether or not the defendant, as assignee of the charterer, is entitled to recover anything by reason of these delays.

The charter party contained, inter alia, the following provisions:

"That the former party (meaning the plaintiff) agrees to let, and the latter (meaning the Templeman Steamship Company, assignor of this plaintiff) agrees to hire, the said steamship or vessel (meaning the steamship Shigizan Maru), * * * she being then tight, staunch, and strong, and in every way fitted for the service."

"That the owners shall * * * provide and pay for the necessary equipment for the proper and efficient working of the steamer."

"That in the event of loss of time from deficiency of men or stores, breakdown of machinery, or ·damage preventing the working of the vessel for more than 24 hours, the payment of the hire shall cease until she be again in an efficient state to resume her duties."

The clause considered in Munson S. S. Line v. Miramar S. S. Co. (D. C.) 150 Fed. 437, affirmed 166 Fed. 722, 92 C. C. A. 412, read as follows:

"That the owner shall provide and pay for all provisions, wages, and consular shipping and discharging fees of the captain, officers, engineers, firemen, and crew, shall pay for the insurance of the vessel, also for all the cabin, deck, engineroom, and other necessary stores, and maintain her in a thoroughly efficient state in hull and machinery for and during the service."

The clause just quoted, supra, is, in substance and effect, similar to the clause in the charter party (quoted supra) that the owners shall provide the necessary equipment, etc. So far as applies to Philadelphia, I am unable to distinguish the case at bar in principle from the Munson Case, supra. See, also, Work v. Leathers, 97 U. S. 379, 24 L. Ed. 1012. Indeed, this case, if anything, is stronger, because clearly the failure to get a new winch at Philadelphia is not 'excusable.

I am inclined to think, however, that there is not involved any question of due diligence. It is always a matter of vital importance to a charterer that the "owner shall provide * * * for the necessary equipment for the proper and efficient working of the steamer." Hence the failure so to provide is a breach of duty, which cannot be excused, unless proximately due to an excepted peril. It is plain that at Philadelphia the captain made no effort whatever to get a new winch. Had he made such effort, he might have obtained a suitable new winch very promptly.

There is some discussion by plaintiff as to the efficacy as matter of pleading of the fourth counterclaim. I think it is sufficient for the purpose.

As to Genoa, the cause of the damage to the winch was a peril of the sea. The evidence shows that the winch was too badly damaged to be susceptible of repair. Here the question of due diligence is relevant, and the question is whether the captain exercised such diligence in endeavoring to obtain a new winch. When the ship arrived in port, it was the duty of the master (or, in other words, the owner) promptly

to provide the vessel with necessary equipment (i. e., a winch) to do the work for which she was chartered. Whether the master did discharge his duty in this respect is a question of fact.

On this branch of the case, the court has not had the advantage of seeing and hearing the witnesses. The impression, however, which the whole testimony has conveyed, is that the master was either indifferent or not fully appreciative of the necessity of providing a proper winch. Capt. McGrath, who impressed me as a very able stevedore, expressed surprise that the winch remained out of commission as long as it did:

"Q. You expressed surprise when you learned that this winch had remained out of commission from March 26th to the 28th day or 29th day of May, did you not? A. I naturally did as a shipmaster. I would wonder why it would be left that way."

Mr. Burke, a clerk in the employ of the firm of Marini & Brichetto, of Genoa, steamship agents and brokers, testified:

"We asked the Captain if he did not think it better to get his winch repaired, if possible. He, if I remember well, replied everything would be done in North America."

The testimony of Burke further showed that, when the Shigizan Maru arrived at Genoa, "things were normal in port." It seems extraordinary that nowhere in the important seaport of Genoa was there a winch to be found. The testimony of Capt. Doi to the contrary is not convincing, and on all the facts and surrounding circumstances I find that the master did not use due diligence to restore the vessel to its efficient equipment in respect of the damaged winch. On this item, therefore, I find with defendant.

Plaintiff may recover judgment for the amount found during the trial, less the items here disposed of and the other items passed upon in the course of the trial.