## HENNESSY *v.* BACON.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MINNESOTA.

No. 1103. Submitted October 21, 1890. — Decided November 10, 1890.

If one party to a contract intends to rescind it on the ground of failure of performance by the other, a clear notice of such intention must be given, unless either the contract dispenses with notice, or it becomes unnecessary by reason of the conduct of the parties.

A settlement of a disputed claim between parties dealing on terms of equality and having no relations of trust or confidence to each other, each having knowledge, or the opportunity to acquire knowledge, of every fact bearing upon the validity of their respective claims, will be supported by a court of equity in the absence of fraud or of the concealment of facts which the party concealing was bound to disclose.

IN EQUITY. The case, as stated by the court, was as follows:

IT was adjudged below, 35 Fed. Rep. 174, that the appellees Bacon and Rogers each owned in fee an undivided one-fourth, and the appellant Hennessy an undivided one-half, of certain lands in Washington County, Minnesota, and that partition thereof be made between them upon that basis. Of this decree the appellant complains, his contention being that he holds the legal title to an undivided half of the lands and that the appellees should be required to surrender to him the title to the other half.

It appears that the lands originally belonged to George N. Chittenden of Illinois, and that by written contract of date

March 27, 1882, he sold them to Bacon, agreeing to convey to the latter, his heirs and assigns, " by a good and sufficient deed of warranty, on or before the 27th day of June, 1882," upon the punctual payment of the consideration, $4400, at such time as Chittenden should execute a sufficient deed of general warranty. The contract provided that if Bacon failed to pay the consideration, then the contract should be void, " time being of the essence of this agreement."

On the 27th of June, 1882, Bacon, — his wife uniting with him, — for the consideration of five hundred dollars, (of which one hundred dollars was paid in cash,) assigned and transferred to Hennessy all his right, title and interest in the agreement with Chittenden. The contract of assignment provided that Hennessy should receive a good, clear and perfect title to the lands through a good warranty deed, with usual covenants, running from Chittenden and wife to Hennessy or from Bacon and wife to Hennessy, if it should be thought proper to have Bacon and wife take title from Chittenden ; also, that Hennessy should pay to Bacon the remainder of the five hundred dollars upon receipt, and only upon receipt, " of such title through such deed to said lands or upon the said Hennessy accepting a deed of warranty " from Chittenden or Bacon. If Hennessy did not receive such title on account of an incurable defect in the title or other cause, the deposit made by him was to be re-funded.

On the day of the execution of the contract between Bacon and Hennessy, the latter made a tender of $4400 to Chittenden's agent residing in St. Paul, in fulfilment of the contract of March 27, 1882, and demanded a conveyance in accordance with its terms. Hennessy was informed, before making the tender, that Chittenden had not executed the required deed, and it was made then only to preserve his rights under the contract. Shortly after the tender, Chittenden left with his agent a deed, in proper form, to be delivered upon the payment of the price of the land, and of this fact notice was promptly given to Hennessy and Bacon. Hennessy received in the meantime an abstract of the title, and discovering therefrom that the record did not show a clear, unencumbered title

in Chittenden, he sent to the latter's agent a memorandum of the defects therein appearing of record, and demanded that those defects be remedied. The agent wrote twice to Hennessy, at Dubuque, Iowa, where he resided, urging him to give attention to the matter — stating, in a letter of date of November 6, 1882, that unless some understanding was soon reached he would return the deed to Chittenden, who would probably decline to carry out the sale. Under date of November 16, 1882, he again wrote to Hennessy as follows: "Yours of 15th inst. received in answer to a previous letter. You instructed me to see Mr. Horn. I immediately saw him and satisfied him as to some of the objections, consulted him as to others, and left the papers with him. He expressed the wish to see you about the matter in order that he might inform me directly and positively what further would be required to make the title good. I have sought in every way since you went into this transaction to obtain an interview with you or some one authorized to act for you in order to arrive at something definite, and have found it exceedingly difficult to do so. Although instructed to refer me to Mr. Horn, Mr. Kavanagh did not do so until I wrote you, and now that I have interviewed Mr. Horn I find it difficult to reach any result. I am not accustomed to that way of doing business, and cannot say I particularly appreciate it. I would suggest that the best and quickest way to come to some definite understanding about the matter is for you to meet Mr. Horn and myself at such early time as may be designated by you. Unless this is done by Monday next (Nov. 20) I shall return the deed (which I hold ready for delivery to you) to Mr. Chittenden, and it is doubtful whether he will carry out the same. Allow me to suggest it is part of your manifest duty not to interpose interminable delays to the settlement of the matter, and that if you will appoint the above meeting or designate Mr. Horn or some other person who can act for you in your absence this transaction can speedily be finished."

The evidence is conflicting as to what passed between the parties after that date. But it is certain that the deed from Chittenden remained in the hands of his agent for more than

three years; and that Bacon repeatedly urged Hennessy to indicate more distinctly than he had done the nature of his final objections to the title, or give up his contract of purchase. Hennessy contended not only that Chittenden's agent well understood the defects in the title, but that they should be remedied. During all that period the lands were appreciating in value, and by the fall of 1885 were worth more than $30,000. Finally at the suggestion of Bacon, Rogers determined to buy them, the understanding being that Rogers was to make the purchase, allow Bacon, as commissions, the difference between $5000 and the amount paid for the lands, and, when Rogers got them, he was to give Bacon an interest of one-half upon the latter's paying half the expenses necessary to clear the title. There was an apparent cloud upon the title of record. It arose out of a mortgage in which Sanborn claimed an interest. Rogers, with knowledge of the contract between Bacon and Hennessy, paid Sanborn $1000 for that interest, and, on the 4th day of November, 1885, took a general warranty deed from Chittenden, paying the latter the sum of $4705.87. Chittenden took from Rogers a bond to indemnify him against any claim and demand made or that might be made by Bacon and Hennessy, or either of them, and against any loss or damage by reason of the conveyance to Rogers.

On the 16th of December, 1885, Rogers informed Hennessy by letter, that, Bacon having forfeited his contract, he had purchased the lands from Chittenden, and put his deed on record. He sought by letters a meeting with Hennessy that the matter might be settled between them. The latter, for some time, took no notice of these letters, but, at last, he wrote to Rogers, under date of January 21, 1886, saying that, while he was fully assured of the validity of his title to the lands, nevertheless, in the interests of peace and for the sake of avoiding what might prove a long, vexatious, and expensive litigation, to say nothing of the bitterness of feeling usually resulting from such disputes, he was willing to meet Rogers and see if some amicable adjustment of the question between them could be reached. He said: " I wish it, however,

distinctly understood that I do not, by this concession to peace and harmony or good feeling, or any thing that may result therefrom, in any way, shape, or manner, waive any right, or recognize or admit in you, or in any one else, any right, title, or interest, legal or otherwise, in or to the lands in question, or any part thereof, and that I emphatically must oppose, and in the strongest terms, forever, any such right, title, and interest in you and any and every existing person. With that understanding I shall endeavor to meet you for this purpose in the course of the coming week, at such time and place as we may hereafter agree upon. . . ."

Hennessy and Rogers finally held a conference, which resulted, March 18, 1886, in a written agreement between them, which recited their respective claims to the lands, and provided: " Now, to settle the same, the said Edward G. Rogers hereby agrees to make and execute to said David J. Hennessy a quitclaim deed of an undivided one-half of said property ; and the said Hennessy agrees to execute and deliver to said Edward G. Rogers a quitclaim deed of an undivided one-half of said property ; and also, in further consideration of said deed, to pay said Rogers the sum of ($2750.00) two thousand seven hundred and fifty dollars. This settlement to be in full of all claims in favor of said D. J. Hennessy and against one George V. Bacon and one George N. Chittenden growing or arising out of any contracts in regard to the sale or purchase of said land by said Hennessy from said Bacon or said Chittenden. This agreement to be executed and carried out as soon as possible, and at least within thirty days from this date, if possible. Time is not of the essence of this agreement."

Pursuant to this agreement Rogers made a deed to Hennessy for an undivided half of the lands, the latter paying therefor the sum of $2750, and Hennessy made a deed to Rogers for the other undivided one-half. Subsequently, Rogers conveyed one undivided fourth interest to Bacon, and at a later date conveyed to him the remaining one-fourth of his original one-half interest for the consideration of $10,000.

The present suit was brought by Bacon for partition between

himself and Hennessy upon the basis of the ownership by each of an undivided one-half interest. Hennessy having alleged in his answer that the settlement of March 18, 1886, was a fraud upon him, Rogers, at Bacon's request, repurchased, and took a conveyance for, the one-fourth interest he had sold to Bacon, and, with leave of the court, became a co-plaintiff in the suit with Bacon.

*Mr. Martin F. Morris* and *Mr. Daniel P. Lawler* for appellant.

*Mr. Edward G. Rogers* and *Mr. Emerson Hadley* for appellees.

MR. JUSTICE HARLAN, after stating the facts as above reported, delivered the opinion of the court.

It may be assumed, for the purposes of the present case, that upon the tender to Chittenden's agent, on the 27th of June, 1882, of the full amount Bacon had agreed to pay for the lands in controversy, Hennessy, as the assignee of Bacon, became entitled to a sufficient deed of general warranty from Chittenden; and that the conveyance from Chittenden to Rogers was so far in derogation of Hennessy's rights as such assignee, that a court of equity, in view of the relations between Bacon and Hennessy and of the knowledge Rogers had of the written agreement between them, would have compelled Rogers, at any time prior to March 18, 1886, (the date of the settlement between him and Hennessy,) to convey the title to Hennessy, upon the payment by the latter of the balance due Bacon under the contract of June 27, 1882, as well as of the amount Bacon had agreed to pay to Chittenden. As Hennessy rightfully demanded a clear, unencumbered title to the lands, and as Chittenden did not, personally. or by his agent, distinctly announce his purpose to rescind altogether the contract of March 27, 1882, unless Hennessy, within a given time, would take such title as appeared of record, it may be that Chittenden was not at liberty, consistently with

Hennessy's rights and without previous notice to him, to treat that contract as abandoned, and to make the sale to Rogers; the general rule being that if a party means to rescind a contract because of the failure of the other party to perform it, he should give a clear notice of his intention to do so, unless the contract itself dispenses with such notice, or unless notice becomes unnecessary by reason of the conduct of the parties. 1 Sugden on Vendors, c. 5, § 5.

But Chittenden assumed to treat his contract with Bacon as forfeited or annulled, and executed a deed to Rogers. Of these facts Hennessy was informed. He knew that Rogers claimed the lands absolutely as his property under the purchase from Chittenden, and that the deed under which Rogers asserted title was recorded. And he had accurate knowledge of the title to the lands so far as it appeared of record. He also knew, at the time of the agreement of 1886, of Rogers' contention that the contract of 1882 had been forfeited by reason of Bacon's failure to comply with its provisions. He, nevertheless, disputed Rogers' claim to the property. But Rogers, with equal distinctness, disputed his claim. And this dispute was settled by the agreement of March 18, 1886, under which Hennessy consented to take an undivided interest of one-half at the price of $2750, and let Rogers have the other half.

He now contends that he was induced to make this settlement by false representations upon the part of Rogers, and because of the suppression of facts that ought to have been, but were not, communicated to him by Rogers. The evidence upon this point is quite conflicting, and does not justify the conclusion that Rogers made any false representations whatever, or that he withheld any facts he was under a legal obligation to disclose. Hennessy says that if he had known, when conferring with Rogers, that the latter had agreed to let Bacon have an interest in the lands, he would not have made the settlement; for that fact, he contends, would have indicated collusion between Rogers and Bacon. We do not see that ignorance of such fact affects the validity of the settlement of 1886, or that it would have prevented its consumma-

tion. If Hennessy had been informed of Rogers' promise to give Bacon an interest in the lands, he would have known that such promise could not, under the circumstances, have been enforced. The money that Rogers paid Chittenden was his own, and in the title acquired by him Bacon had no legal interest. Rogers moved in the matter of the purchase from Chittenden entirely upon his own responsibility. With full knowledge of the title that Rogers had acquired, Hennessy deliberately chose to compromise the dispute between them, as shown by the agreement of 1886, and by the deeds executed in pursuance of its provisions. No fraud was practised by Rogers. He was guilty of no unfairness. He concealed nothing that he was under legal obligation to state. His information in respect to the title was no greater than Hennessy had, or than Hennessy could easily have obtained. It is the case of the compromise of a disputed claim, the parties dealing with each other upon terms of perfect equality, holding no relations of trust or confidence to each other, and each having knowledge, or having the opportunity to acquire knowledge, of every fact bearing upon the question of the validity of their respective claims. *Cleaveland* v. *Richardson,* 132 U. S. 318, 329. Such a settlement ought not to be overthrown, even if the court should now be of opinion that the party complaining of it surrendered rights that the law, if appealed to, would have sustained. After this settlement was made, Rogers was at liberty, for any reasons deemed by him sufficient, to give Bacon an interest in the one-half acquired by him under the settlement of 1886, and the interest thus acquired by Bacon did not inure to Hennessy by reason of the relations created between them by the original contract of 1882. As between Rogers and Bacon the lands became the absolute property of the former under his purchase from Chittenden, and, under the settlement of 1886, and, so far as Hennessy was concerned, an undivided one-half interest was confirmed to Rogers, as his property, to dispose of as he deemed best.

*Decree affirmed.*