## THORNTON v. NATIONAL CITY BANK OF NEW YORK (two cases).

### Nos. 21, 22.

Circuit Court of Appeals, Second Circuit.

Nov. 3, 1930.

Morris Hillquit, of New York City, for appellants.

Shearman & Sterling, of New York City (Carl A. Mead and Otey McClellan, both of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

These actions were tried together and will be considered in one opinion. They were tried before a referee, with power to hear and determine the issues, and, after his findings of fact and conclusions of law were made and signed, a judgment was entered by the clerk of the District Court, for the appellee, dismissing the complaints and in appellee's favor on counterclaims, a trial by jury having been waived.

The referee found, in the case of the appellant Harold Thornton, that he was a subject of Great Britain, residing in London, but temporarily in Petrograd, where he opened an account, on or about October 9, 1917, with the appellee's branch bank, and had a balance of 206,325 rubles on November 15, 1917, when he requested a loan of 600 pounds per annum during the term of the war, to be repaid three months after the conclusion of peace, and secured the loan by transferring 200,000 rubles from a current account to a time deposit (twelve months) account drawing interest at 4 per cent. Two days later this was agreed to by the appellee with the statement: "This loan is secured by a deposit with us of Rls. Two Hundred Thousand (Rls. 200,000), which will remain while any advances made to you by us remain unpaid." Six hundred pounds were advanced under this agreement on or about November 15, 1917, and a second loan of 600 pounds on January 6, 1919. On January 26, 1922, a request was made for payment of the loan, stating that peace had been officially declared September 1, 1921, and that the loan was payable December 1, 1921. Another demand was made May 2, 1924. The loans have never been paid.

Appellants claim that peace was concluded January 10, 1920, the date of the ratification of the Treaty of Versailles between Great Britain and Germany, and that the sterling loans accordingly became due April 10, 1920. Appellants claim that the rubles were deposits creating the relationship of creditor and debtor, and that on September 1, 1918, at which time the Petrograd branch was abandoned because of the revolution in Russia, the rubles became payable at the then value of 13 cents, the price paid in New York for Romanoff ruble notes. On this they claim interest from September 1, 1918, at 6 per cent., and the present actions were for the recovery thereof. On May 13, 1924, the appellant wrote appellee: "I can only ask you to retain the rubles I deposited with your Petrograd office as collateral for the advances made to me in London, until such time as the Soviet will acknowledge their liability, and place me in a position to redeem the said loan." It was stipulated that under the Russian law, as well as under the New York law, there was no right to demand the return of the pledge until repayment of the loan, and the referee so found.

The referee found the appellant Arthur Thornton, also was a British subject, residing in England, and he deposited on September 21, 1918, 100,000 rubles, drawing interest at 3½ per cent. per annum, providing thirty days' notice of withdrawal be given. On October 14, 1917, 200,000 rubles additional were deposited as a time deposit for one year at 4 per cent., and on November 15, 1917, the Petrograd branch loaned him 1,000 pounds under a similar agreement as to appellant

Harold Thornton; the loan being secured by the deposit of rubles and to be paid three months after the conclusion of peace. On January 6, 1919, the Petrograd branch made a further loan to the appellant, in London, of 1,000 pounds. These loans have not been paid. Demand was made therefor January 26, 1922, and May 2, 1924.

In each case the referee entered judgment against the appellants for the amount of the respective loans with interest. The appellants' cases rest on the claim that, upon the appellee's abandoning its branch September 1, 1918, because of the revolution, the rubles deposited thereupon became due; the theory being that the contract was broken by the appellee when its personnel was forced to leave Russia, and thereby the contract ceased. The referee found against this claim; also that the appellants did not intend to give up the benefit of the contracts or their claim that the appellee was in default, but accepted another loan at a later date during the term of the war. He found that the appellee performed its contract and cannot be held liable for not offsetting the rubles against this sterling loan as of September 1, 1918.

■■ These judgments were entered by the clerk on the referee's report. No application was made to confirm the report before the District Judge; no exceptions were filed to the findings; no bill of exception has been signed or filed. Since there is no bill of exceptions, the only question presented to us is whether the judgments are justified in view of the pleadings. Nothing is before us except the pleadings and judgment rolls. Reilly v. Beekman, 24 F.(2d) 791 (C. C. A. 2); Thompson-Starrett Co. v. La Belle Iron Works, 17 F.(2d) 536 (C. C. A. 2); Demotte v. Whybrow, 263 F. 366 (C. C. A. 2); 28 USCA § 879; Steger v. Orth, 258 F. 619 (C. C. A. 2). In Steger v. Orth, this court reviewed a cause after motion to dismiss the writ or affirm was made, where in an action at law the judgment was entered upon the report of the referee by the clerk in conformity with the state practice. We pointed out that this practice of entering judgment was erroneous, but said, at page 620 of 258 F.:

"The method of transforming the referee's findings into the action of the court and making the judgment recommended by the referee a judgment directed by the judge has not always been the same. Sometimes a motion for a new trial has been made; sometimes judgment has been applied for on the referee's report; sometimes two orders, one denying a new trial and the other

directing judgment, have been entered. But this procedure is merely formal, and how thoroughly it is no more than a method of insuring to the party defeated before the referee that right of appeal which he never expected or intended to surrender appears in the opinion of Lacombe, J., in Kilduff v. Roebling's, etc., Co. [C. C.] 150 F. 240. * * * What, therefore, should have been done was to procure a formal order, signed as of course, directing the clerk to enter the very judgment that was entered. But this mistake could have been corrected any time within the term of entry of judgment or any lawful extension thereof. The mistake was as much that of the defendant below as of the plaintiff, and we do not think the defendant in error could be heard to make the objection now."

■ The Supreme Court has pointed out the duty of the aggrieved party to except to the conclusions of law drawn by the court from the facts found by separately stating them and excepting thereto. Fleischmann Co. v. United States, 270 U. S. 349, 356, 46 S. Ct. 284, 70 L. Ed. 624; Maryland Casualty Co. v. Jones, 279 U. S. 792, 796, 49 S. Ct. 484, 73 L. Ed. 960.

However, limiting our investigation to the inquiry of whether the referee's findings of fact support his conclusions of law and the judgment entered, which we may do only in the absence of a bill of exceptions, we find nothing warranting the claim of reversible error.

■■ The rules deposited by the appellants were security for the loans made by the appellee on September 1, 1918, the date alleged by the appellants that they were payable. At that time the sterling debts remained unpaid. Moreover, no notice of election to rescind was given September 1, 1918, and they continued to enjoy the benefits of the contract, and, indeed, demanded further performance by way of further loans under its terms. Rescission may not be claimed for a breach on the part of the other party without giving notice of such claim to the other party. Hennessy v. Bacon, 137 U. S. 78, 84, 11 S. Ct. 17, 34 L. Ed. 605; Kauffman v. Raeder, 108 F. 171, 54 L. R. A. 247 (C. C. A. 8). That the appellee had the right to hold the rubles deposited as security until the sterling debts were paid has support in the authorities. Gage v. Riverside Trust Co., 86 F. 984 (C. C. S. D. Cal.); McGrath v. Carnegie Trust, 221 N. Y. 92, 95, 116 N. E. 787.

The referee properly held that the acceptance of additional loans under the contract was recognition by the appellants that the terms of the contract were still in force, which is contrary to the claim of the breach on September 1, 1918. Rubber Trading Co. v. Manhattan Rubber Co., 221 N. Y. 120, 126, 116 N. E. 789; Brennon v. Nat. Equitable Inv. Co., 247 N. Y. 486, 160 N. E. 924. And the referee properly concluded that there was no offset by operation of law; there were no mutual debts. The appellee owed the appellants rubles in Petrograd, and the appellants owed the appellee sterling in London. The places of payment of the two debts are not the same. An American court cannot render a judgment in rubles or sterling. It can only render a judgment for a dollar value of the sterling or the rubles at the date of judgment as damages. Die Deutsche Bank Filiale Nurnberg v. Humphrey, 272 U. S. 517, 47 S. Ct. 166, 71 L. Ed. 383.

The claims of set-off must be certain; either already reduced to precise figures or capable of being liquidated by calculation without the intervention of the jury to estimate them. 1 Morse on Banks & Banking (6th Ed.) § 335, pp. 779, 780.

In the case of Sokoloff v. Nat. City Bank, 250 N. Y. 69, 164 N. E. 745, referred to by the appellants, the New York Court of Appeals found that Sokoloff, through his sister, demanded payment of rubles at the bank in Petrograd in December, 1917, before the banks were nationalized and when payment was still possible, and such demand was wrongfully refused. That case presented a different question than is presented here. At bar, the appellee demands payment of sterling debts, and offers upon such payment to pay the ruble deposits. We find no error in the conclusions of the law of the referee, and the judgments entered will be sustained.

Judgments affirmed.