**AUTOMOBILE INS. CO. OF HARTFORD, CONN. v. ST. PAUL FIRE & MA-RINE INS. CO.**

**No. 318.**

Circuit Court of Appeals, Second Circuit.

April 5, 1937.

Lester Weil, of New York City (Emanuel Thebner, of New York City, of counsel), for appellant.

Hunt, Hill & Betts, of New York City (John W. Crandall, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

PER CURIAM.

This is an appeal from a judgment for the defendant upon a counterclaim, interposed in an action to recover for salvage collected by the defendant as the re-insured in a contract of re-insurance. The cause being at law, the parties agreed to submit all the issues to a referee "to hear and determine" under section 464 of the New York Civil Practice Act. He heard the evidence and filed his report, giving judgment to the plaintiff upon its complaint for one-fourth of the salvage collected under a contract or "treaty" of re-insurance between the defendant and an insurance company, which for convenience we shall call the "Cuban" company. The liabilities of this company were later assumed by another insurance company, which in turn we shall call the "American" company, whose assets the plaintiff later took over and whose liabilities it assumed. The defendant counterclaimed for a number of items, of which, however, only four are at issue on this appeal: First, the re-insurer's share of expenses incurred in successfully contesting claims made by the cargo of the S. S. Fidalgo; second, the re-insurer's share of losses paid to owners of the S. S. Rain-

ier; third, "collecting commissions" upon the salvage sued for in the complaint, paid to one Harrison, who was the defendant's agent; fourth, "contingent commissions" upon the profits of the business, also paid to Harrison. The referee allowed these items, and they were deducted from the plaintiff's recovery. The plaintiff alone appealed.

The practice here chosen has resulted in considerable confusion, especially on appeal; but in Steger v. Orth, 258 F. 619, we very deliberately sanctioned it, though, as here, judgment was entered directly on the referee's report without the action of a district judge. We had already approved it in Fifth National Bank v. Lyttle, 250 F. 361, and we did so later in Thornton v. National City Bank, 45 F.(2d) 127. The situation is quite different from confirmation by order of the District Court after consideration of the referee's report; and it may be doubted whether, as a new question, section 773 of title 28, U.S.Code (28 U.S.C.A. § 773), ought not to be considered as the only way by which an action at law may be tried to a jury, though it need not forbid the judge's informing himself by a reference or otherwise. But we will not raise any doubts that the state practice is permissible just as it exists, and that we may examine the evidence to see whether there is anything to support the findings, as in the case of a verdict.

Harrison's testimony was adequate basis for the finding that the agreement between the "Cuban" company and the defendant was one of re-insurance; we cannot go behind it. However, the risks on the S. S. Fidalgo and S. S. Rainier were "ceded" by him to the "Cuban" company after February 10, 1922, when it abandoned its American business, and the "American" company assumed its liabilities; they were not therefore part of those liabilities. Harrison swore that he did not know of the change, and that he continued to deal with the "Cuban" company as before. Moreover, the "American" company received his letter, and knew of his belief that the risks were being "ceded" to the "Cuban" company; indeed it received some at least of the premiums. These circumstances imposed upon it a duty to speak, or else to assume the same liability on its own part as the "Cuban" company's. Perhaps the breach of such a duty is better classed as a tort, but its practical results are the same as though the "American"

company had itself become a re-insurer. In any event it became liable for the expense of defending the Fidalgo claims and for the Rainier loss.

The "collecting commissions" were for securing the general average award upon the "Sudbury," for which the plaintiff's own claim was filed. Thus they arose out of a transaction made directly with the "Cuban" company and assumed by the "American" company. But Harrison got the right to commissions only by virtue of a contract made with Despard after February 10, 1922, and while Despard was acting for the "American" company, unknown to Harrison. Although, therefore, the "American" company's liability may rest upon the same theory as those just mentioned, the commissions were due to Harrison and the defendant could not sue for them unless he assigned them. He did not assign them, but he deducted them in a settlement made with the defendant in 1933, when he accounted to it for the salvage. The defendant was right in so taking over the proceeds; in the absence of any stipulation to the contrary in the agreement of re-insurance it was entitled, as re-insured, to collect salvage, like premiums. As Harrison had the power to deduct his commissions from any remittance, he was justified in retaining his percentage not only upon the defendant's share, but upon the share of the "Cuban" company as well. Thus, the defendant's allowance to him was not a voluntary payment; the defendant was not an intermeddler; being authorized to collect on behalf of the "Cuban" company, it was obliged to submit to the deduction.

However, the referee allowed too much. This came about as follows: A general average adjustment was stated as to the "Sudbury" in August, 1924; but Harrison was not content with it. It showed a credit to the underwriters of $21,105.84, to one-fourth of which the "Cuban" company was entitled. Due to Harrison's insistence the parties embarked upon a long litigation which was not concluded until 1932, and which resulted in a·payment of only $15,-279.31, out of which the nett recovery was $10,406.30. Harrison deducted 10 per cent. of this. The referee very properly refused to limit the plaintiff's recovery upon its complaint to one-fourth of the actual recovery; he charged the defendant with one-fourth of the amount of the original statement, plus interest earned upon it, $5949.-15, since the shrinkage had been due to Harrison's mistaken zeal, or obstinacy. And in computing Harrison's commissions he used the same amount, though it was not that on which the commissions had been reckoned, or which the defendant had paid. There thus resulted an overcharge of $334.75 which the defendant must remit from its recovery. The "contingent commissions" were, on the other hand, part of the original contract with the "Cuban" company; they were to be calculated upon the profits of the business including those earned after the company went out of business. The "American" company received the profits of this business by remission from the defendant through Harrison, and they were subject to the deduction, just as the salvage was subject to the deduction of the "collecting commissions."

All these items were not barred by the statute of limitations. The cargo of the Fidalgo was injured in 1922; claim was made and negotiations ensued during which the expenses were incurred. The arbitrators disposed of the claim on August 14, 1929. The expenses were not due until then, and the counterclaim was filed in July, 1934. The Rainier claim was allowed at the same time that the Fidalgo claim was denied. Harrison deducted his "collecting commissions" and his "contingent commissions" in February or March,· 1933. We can see no reason why the defendant should have presented its claim upon the liquidation of the "American" company; the plaintiff had taken over its assets and assumed its debts; it became the principal.

Judgment modified by increasing the plaintiff's recovery by $334.75, and as modified, affirmed. The defendant will pay one quarter of the costs of this appeal.