**THEATRE TIME CLOCK CO., Inc.**

v.

**MOTION PICTURE ADVERTIS-
ING CORP.**

**Civ. A. No. 68–1117.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

Feb. 19, 1971.

David A. Donohoe of Rowley & Scott, Washington, D. C., and Robert E. Winn, of Sessions, Fishman, Rosenson, Snellings & Boisfontaine, New Orleans, La., for plaintiff.

Gibbons Burke of Chaffe, McCall, Phillips, Burke, Toler & Sarpy, New Orleans, La., for defendant.

## MEMORANDUM OF REASONS

COMISKEY, District Judge.

This case now comes before the Court on the motion of plaintiff, Theatre Time Clock, Co., Inc. [TTC] to reopen the case, and on the motion of defendant, Motion Picture Advertising Corporation [MPA] to enforce a settlement agreement. The motions were argued in open court and were taken under submission. The case involves a civil anti-trust suit whereby TTC alleges that MPA was engaged in a scheme to exclude TTC from competition in the selling of motion picture advertising in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1, 2 and Section 3 of the Clayton Act, 15 U.S.C.A. §§ 12, 14, 15. Treble damages and injunctive relief are sought.

The history of the case shows that it was commenced in Chicago, Illinois in 1967. Thereafter, it was dismissed by TTC, reinstituted in Tampa, Florida and then transferred to New Orleans, Louisiana. The record makes clear that settlement discussions were carried on after the case arrived in New Orleans between counsel for MPA, Gibbons Burke, and co-counsel for TTC, Leonard Rosenson and David Donohoe.

From the affidavits submitted by all parties and argument on the motions these undisputed facts emerge: Co-counsel for TTC, Donohoe, met with the president of TTC, William Basle, in September 1970. At that meeting a basis for what would be an acceptable settlement was worked out. Sometime after this meeting Donohoe talked with his co-counsel, Rosenson, to ask Rosenson to solicit an offer of settlement from MPA. Rosenson proceeded to meet with counsel for MPA and asked if MPA would pay "X" dollars which would be acceptable to TTC. On or about October 2, 1970, counsel for MPA telephoned co-counsel for TTC, Rosenson, to offer as a settlement $5,000.00 in exchange for TTC's dropping the suit and executing a release. Co-counsel for TTC discussed the offer of MPA. Immediately thereafter co-counsel Rosenson contacted counsel for MPA that the offer was acceptable. The Court was then advised by counsel for MPA that the case was settled. The Court issued a 60 day dismissal order on October 2, 1970. Two weeks later, on or about October 16, 1970, MPA sent a settlement check to their counsel for $5,000.00.

Thereafter counsel for MPA submitted several copies of a release and a stipulation of dismissal to co-counsel for TTC. On November 2, 1970 co-counsel for TTC, Donohoe, advised counsel for MPA that the release was unacceptable in that it deviated from the original offer of settlement by additionally requiring the president of TTC, William Basle, to sign a personal release and also a warranty that he (Basle) had sole interest in TTC. Co-counsel for TTC then formulated a

counter-offer which included Mr. Basle's personal release plus two new conditions. Counsel for MPA rejected this counter-offer and re-submitted the original release but excluded the personal release and warranty. On or about November 5, 1970 co-counsel for TTC, Rosenson, rejected the release and proceeded on November 24, 1970 to move for re-opening the case. Counsel for MPA then moved to enforce settlement.

TTC's basic position is threefold: that no settlement agreement was ever reached; only discussions and negotiations took place. In the alternative they argue that even if there had been a settlement agreement, that it was subsequently terminated at defendant's instance. Finally, it is argued that the agreement is unenforceable because it was never reduced to writing as required by Louisiana law.

■■ The Court begins by recognizing the principle that voluntary settlements of civil controversies are highly favored by courts and a valid settlement agreement once reached, cannot be repudiated by the parties, and after a binding settlement agreement has been made, the actual merits of the settled controversy are without consequence. In addition, the trial court has power to summarily enforce on motion a settlement agreement entered into by the litigants while the litigation is pending before it. Cia Anon Venezolana De Navegacion v. Harris, 374 F.2d 33 (5th Cir. 1967). However, the Court cannot force a settlement on parties where no settlement was intended and the power of summary enforcement is ill-suited to situations presenting complex factual issues and should only be used with problems that are capable of precise resolution. Autera v. Robinson, 136 U.S.App. D.C. 216, 419 F.2d 1197 (1969).

■■ The Court takes the position that the settlement contract was complete by October 2, 1970, when counsel, being authorized to represent their clients in this case had come to an agreement whereby MPA would pay $5,000.00 in exchange for a release and stipulation of dismissal by TTC. This is binding even though there was no formal offer and acceptance. The affidavits and argument in open court warrant a finding that the negotiations reached a point where mutual assent had been expressed orally to settle the litigation. The law requires no more formality and not greater particularity than appears here for the formation of a binding contract. Restatement, Contracts §§ 19(b), 26. Main Line Theatres, Inc. v. Paramount Film Distributing Corp., 298 F.2d 801 (3rd Cir. 1962).

■■ Even if counsel for MPA tendered an improper release, this would not allow a counter-offer such as the one submitted by co-counsel for TTC, since settlement had been accomplished and plaintiff's remedy was to insist on a proper release. The agreement became obligatory when co-counsel for TTC contacted counsel for MPA that the offer was acceptable and not from the date of a subsequent writing. 15A C.J.S. Compromise and Settlement § 17, p. 214, Restatement, Contracts, §§ 29, 64, 65. The record shows that as soon as counsel for MPA learned that the release contained two objectionable provisions, he took steps to eliminate them, thereby conforming to the original intent of the parties.

What has been said disposes of plaintiff's contentions that no settlement was ever reached, and alternatively, that if one was reached, it was vitiated by defendant counsel's conduct. As to the third contention—that the oral agreement is unenforceable—the Court's attitude is suggested above—that it was not necessary that there be a written settlement agreement. Co-counsel for plaintiff argue that the Court must look to state law to determine whether the oral compromise is enforceable. The relevant code article of Louisiana requires that settlement agreements be reduced to writing. Therefore, co-counsel contend, the oral agreement is unenforceable.

L.S.A.–C.C. Art. 3071 entitled "Transaction or Compromise, definition" holds:

"A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which everyone of them prefers to the hope of gaining, balanced by the danger of losing.

"This contract must be reduced into writing."

The Court is of the opinion that state law is not necessarily determinative where the litigation is based on a federal question. This is an anti-trust suit based on two federal statutes, the Sherman and Clayton Antitrust Acts. To hold that a settlement of this suit should be determined by state law is artificial since the operative legal policies are federal in origin. In a case such as this, the Court has the choice of fashioning an independent federal doctrine. Wright, Federal Courts 2nd Ed., § 60, p. 251 (1970).

The Court, however, thinks an oral compromise of settlement is enforceable whether it applies its own idea of federal contract law or whether it is guided by state law. Under L.S.A.–C.C. Art. 3071 and the jurisprudence, an agreement of compromise need not be in writing, unless it deals with an immovable. Here there was a writing, a check made out in full settlement to the order of TTC. It is dated October 16, 1970 for the amount of $5,000, the settlement figure agreed upon. C & M Properties, Inc. v. R. B. Alexander, Inc., 219 So.2d 229 (La.App. 1 Cir. 1969); Thompson v. Stacy, 148 So.2d 834 (La.App. 4 Cir. 1963). Since the Court finds that an enforceable oral agreement of compromise was entered into, the motion of MPA to enforce the settlement is granted and the motion of TTC to reinstate is accordingly denied.