**UNITED STATES of America,**
**Plaintiff,**

v.

**KATY INDEPENDENT SCHOOL DIS-**
**TRICT et al., Defendants.**

**Civ. A. No. 70-H-832.**

United States District Court,
S. D. Texas,
Houston Division.

Oct. 26, 1971.

Anthony J. P. Farris, U. S. Atty., and William Bowers, Asst. U. S. Atty., Houston, Tex., for plaintiff.

James S. Kelly, of Knipp & Sedgeley, Houston, Tex., for defendant Katy Independent School District.

Pat Bailey, Asst. Atty. Gen., of Tex., Austin, Tex., for defendant Texas Education Agency.

## PRETRIAL MEMORANDUM AND ORDER NUMBER I

NOEL, District Judge.

Late on the Friday afternoon of August 7, 1970, there fell upon this Court's docket a desegregation suit brought by the United States against the independent school districts of the Texas communities of Galena Park, Katy, Klein and Madisonville. Also joined as defendants were the superintendents of these school districts, as well as the Texas Education Agency and the Texas Commissioner of Education. This suit was among several brought almost simultaneously against more than a score of Texas school districts. Jurisdiction was predicated upon 28 U.S.C. § 1345 and Title IV of the Civil Rights Act of 1964, 42 U.S.C. § 2000c-6. Injunctive relief was sought requiring disestablishment of alleged dual school systems prior to the commencement of the 1970-71 school year, a deadline which was then only days away. At 7:00 p. m. on that Friday evening, there issued an order to show cause and the matter was set down for hearing on August 14, 1970.

The show cause hearing of August 14 took place in a somewhat demanding atmosphere. Rather ironically, this condition was aggravated by an attitude of critical urgency on the part of a plaintiff which was itself solely responsible for having waited until the eleventh hour to file suit. On or before the day of this hearing, all defendants except the Texas Education Agency had responded, but the contentions and positions of the parties were understandably in a posture of disarray. Although the purpose of this initial hearing was merely to bring some semblance of order from confusion, the ranks were soon thinned when it was announced that a tentative agreement had been reached between the Government and Galena Park, and that portion of the suit was continued pending submission of a consent decree.

In their responsive pleadings, Klein and Madisonville had challenged the sufficiency of the Attorney General's Certificate which accompanied the complaint as required by law. Cf. 42 U.S.C. § 2000c-6. When invited by the Court to state his position at the show cause hearing, counsel for Klein reiterated his attack upon the Certificate, pointing out that there had been no showing that the complaints upon which the Attorney General relied in issuing the Certificate had been received from parents of children residing within the defendant districts. At this time, counsel for Madisonville and

Katy expressed a desire to join in this contention, and the Court indicated a disposition to order in camera production of the letters of complaint should such action appear necessary and appropriate to effectuate the intent of Congress.

When asked to state the Government's position in regard to Katy, plaintiff's counsel pointed out that all-black Kilpatrick Elementary School and all-white Katy Elementary School were being operated within a half-mile of each other, and that *"the relief which the Government seeks here is merely an order to set into motion a devising of a plan of desegregation of these schools."* This rather limited objective as to Katy is consistent with the wording of the proposed order proffered by the Government in its moving papers, the thrust of which was to compel Katy and Madisonville to collaborate with the Texas Education Agency and the United States Department of Health, Education and Welfare in formulating a plan for immediate conversion to unitary systems. In response, counsel for Katy stated that the district had evidence to produce on the issue of liability and was both desirous of and *ready for a trial on the merits.* Additionally, he pointed out that the district had the present intention to phase Kilpatrick school out of operation at the end of the 1970–71 school year and to transfer all Kilpatrick students and faculty to Katy Elementary School, thus in effect meeting the Government's demands in all material respects save timing.

Deeming the threshold issue of the validity of the Certificate to be the question of immediate concern, bearing as it did upon the maintainability of the suit, the Court ordered the parties to brief the point in compliance with a fifteen day timetable then established. At the conclusion of this August 14 hearing, the Court stated that the case would be carried until resolution of the Certificate question, and thereafter, if necessary, would be heard on the merits as soon as practicable.

On August 21, 1970, the Texas Education Agency filed its answer, in which it joined the other defendants in challenging the sufficiency of the Certificate. On the same day, a consent decree resolving the controversy between plaintiff and Galena Park was approved by the Court and entered, thus leaving as defendants Katy, Klein, Madisonville, and the Texas Education Agency.

On September 2, 1970, at an impromptu hearing held in Galveston to consider certain discovery problems which had arisen between Katy and the Government, Katy was granted leave to amend its answer. The amended response, in addition to renewing the procedural attack on the sufficiency of the Certificate, joined issue on the merits by denying that Katy operated a dual school system.

On September 4, 1970, the cause again came on for hearing on the issue of the Certificate, and, if need be, the merits. At the outset, the field of disputants was again narrowed with an announcement that the Government had reached an accord with Klein and Madisonville. The action as to those defendants was severed.

Attention then turned to the Katy cause, which alone remained in contention. *Katy announced ready.* Speaking to the preliminary issue of the Certificate, the Assistant United States Attorney General quite candidly conceded that the complaints upon which the Attorney General acted in filing the suit were not received from parents of children residing within the Katy Independent School District. He then stated that he had been authorized by the Attorney General to produce in camera letters of complaint from parents of children attending school in this State at large. Deeming counsel's admission to the effect that no complaints had emanated from Katy sufficient to decide the narrow question at bar, the Court declined to require production of non-Katy letters, and carried the Certificate question with the case. At this juncture, court was recessed for

the noon hour, after which it was anticipated that the case would proceed to trial. However, upon resumption of court after the noon recess, it was announced that Katy, the Government and the Texas Education Agency had tentatively agreed to settle the lawsuit, whereupon court was adjourned pending submission of a consent decree *if the parties were able to agree upon terms and reduce them to writing.*

On November 6, 1970, a motion denominated Stipulation and Advice, subscribed by counsel for the Government and Katy, was filed with the Clerk. Only paragraph I of that writing which clearly expressed the agreement between the Government and Katy was approved by the Court. The Court's reason for conferring only partial approval was its strong conviction, based upon representations of the three parties in open court as well as discussions at an unreported chambers conference, that the terms of the settlement were far from firm.

■■ In a conventional civil case, of course, the better practice is to withhold the Court's imprimatur from a settlement agreement until all of its material terms have been stated with sufficient specificity to constitute an enforceable agreement. However, in the peculiar circumstances of the instant case, with the school term rapidly approaching, the Court deemed it advisable to place its endorsement upon as much of the embryonic agreement as necessary to effectuate immediate student and faculty integration. In so doing, the Court was well aware of the decisional law in this area and was cognizant that the law of remedies in desegregation cases often requires implementation of conditions such as those specified in Singleton v. Jack-

son Municipal Separate School District, 419 F.2d 1121 (5th Cir. 1970); Id., 425 F.2d 1211, and United States v. Hinds County School Board, 433 F.2d 611 (5th Cir. 1970). However, lest the primary goal of immediate conversion to a unitary school system be jeopardized by needless conflict over remedial details, it was felt by the Court that the rather unusual procedure of partial approval was appropriate. Therefore, despite the technical problems inherent in piecemeal approval of a settlement, the Court chose to do so in the exercise of the broad equitable discretion which has devolved upon District Courts in cases of this nature. Cf. Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971). Viewing the matter from a hindsight perspective of more than a year later, it would appear that the procedure followed has been vindicated.[1]

On November 9, 1970, three days after the action of the Court described above, rather than submitting an interlocutory order which would formalize the limited approval of the stipulation as requested by this Court orally in chambers and in its handwritten notation, plaintiff filed a "Motion to Enlarge Final Decree". The effect of the motion as shown by the proposed decree attached, would have been to substantially enlarge the stated objective of the Government in this case, and to add certain additional provisions which have been frequently employed in desegregation suits in this Circuit. The motion to enlarge was opposed by defendant Katy.

The extent of the variance between the parties' differing conceptions of their agreement is immediately obvious from the disparity between the Stipulation and Advice and the proposed decree

1. The Kilpatrick Elementary School was closed within a matter of days. All of its students attend the Katy Elementary School, which is fully integrated as to students, faculty and non-teaching staff. No transferred Negro faculty or staff have been discharged. Transportation and extra-curricular activities are conducted on an integrated basis. The foregoing statements are found as ·facts, at this time, based upon evidence presented at the hearing of October 12, 1971 on plaintiff's motion for entry of decree. Plaintiff offered no evidence to the contrary. However, plaintiff will not be precluded from offering such evidence at trial, should it be able to do so.

which plaintiff attached to its motion to enlarge. What was purportedly expressed in the former document in a few sentences had burgeoned within three days, through plaintiff's interpretation, into an extensive and elaborate prescription dealing with subjects as diverse as ratios, site construction, and semiannual reports. These matters can hardly be characterized as the "details" of which the Assistant United States Attorney spoke at the time of the November 4 announcement in open court. Nor can they be regarded as mere prophylactic measures designed to prevent the return of a dual school system, the existence of which Katy never conceded and the Court never found.

 Deeming it inappropriate to substantially modify a stipulation at the instance of only one of its signatories, this Court denied the motion to enlarge. From this action, which was denoted only by a docket entry, plaintiff took an appeal.[2] Without discussion of appellant's motion to enlarge, the Court of Appeals for the Fifth Circuit vacated and remanded, directing this Court to forthwith require that the school board reconsider its position in the light of the law presently applicable. This Court was also directed to implement the provisions of *Singleton* and *Hinds County*, supra. It is clear that the Court of Appeals intended such implementation to occur at the appropriate time. This Court does not construe such direction to be a mandate to deny defendant a hearing on its motion to dismiss, or a trial, should defendant decline or be unable to agree with plaintiff on the terms of a consent decree.

The United States has now filed a motion to enter decree, in which this Court is again urged to summarily amend the existing arrangement by addition of the *Singleton* conditions, without Katy being accorded a trial. It is the contention of the Government that the Court should enforce *the Government's version of the settlement agreement* announced in open court on the afternoon of September 4, 1970. The record reflects that the colloquy purporting to express the agreement was as follows:

*The Court:* Mr. Fleischer, do you have a statement to make?

*Mr. Fleischer:* Yes, Your Honor, if the Court please. The parties, that is, the Texas Education Agency and the Katy Independent School District, as well as the United States, have engaged in consultation and have a proposal to make to this Court and would be willing to enter into a Decree, consented to by the parties, which would immediately desegregate the faculties of the Katy Independent School District, to be known in detail by Wednesday, September 9, 1970, at 4:00 p. m., whether or not the faculties of the Katy Independent School District can be fully desegregated in accordance with the provisions of *Singleton versus Jackson School Board.* If the School Board is unable to make the necessary faculty assignments in accordance with that provision which they will know by that time, September 9, 4:00 p. m., the Katy Independent School District will operate in accordance with its present student assignments but with desegregated faculties for the remainder of this term, and then the Katy Independent School District will have all students residing in the area presently served by the Katy School and the Kilpatrick School served by only the Katy School, starting on the first day of the second semester of this school year.

If the school district is unable to make the necessary faculty arrangements by Wednesday of next week,

2. On appeal, defendant-appellee apparently did not raise the doubtful question of whether this Court's action—which was functionally a ruling on the breadth of a pretrial stipulation—constituted an appealable order under the final judgment rule. In any event, it is clear that a great deal of time, expense, and ambiguity might have been avoided had plaintiff attempted to resolve, or at least to clarify, its problem prior to filing an appeal.

then no later than two weeks from this Friday, the school district will assign all of its students living in the area presently served by Kilpatrick and Katy to the Katy Elementary School and will, also, of course, desegregate its faculty and meet the other *Singleton* conditions.

We would offer, Your Honor, if the Court please, to have leave until next week, until after September 9th, *to know exactly what the terms of this order will be* and at the Court's convenience, enter into an order following that date.

*The Court:* Does that correctly state your position, Mr. Kelly?

*Mr. Kelly:* We agree to that, Your Ionor, *what he stated. That is our position in the present agreement.*

*The Court:* Mr. McCoy?

*Mr. McCoy:* The Texas Education Agency agrees with this plan, Your Honor. It is an acceptable plan, *plus a minor stipulation or two.*

*The Court:* Very well. I congratulate all of you in facing up to the problem and you go ahead with your drafting and let the Clerk know when you would like to come in and to get the Decree signed, and, of course, Mr. Tepper and Mr. Fleischer—you will be excused from being present if you don't find it convenient to be here. Mr. Bowers can bring it in *if it's all agreed to.*

*Mr. Bowers: I will offer to attend to the details,* Your Honor.

*The Court:* All right. Unless you feel it's absolutely necessary to get it signed on a given day, I might ask you to defer until sometime at the end of next week or the following week, even, but I'm sure *if you have agreed to the terms of it,* it will be carried out without the mere ministerial act of signing it.

(See Tr. of 9/4/70 hearing, pp. 15–17, italics added.)

 The law is clear that settlement agreements are binding upon the parties and that the trial court is empowered to summarily enforce a settlement agreement made by the litigants while the case is pending before it. Hennessy v. Bacon, 137 U.S. 78, 11 S.Ct. 17, 34 L.Ed. 605 (1890); Cia Anon Venezolana v. Harris, 374 F.2d 33 (5th Cir. 1967); Kelly v. Greer, 365 F.2d 669 (3rd Cir. 1966), certiorari denied 385 U.S. 1035, 87 S.Ct. 772, 17 L.Ed.2d 682 (1967); Cummins Diesel Michigan, Inc. v. The Falcon, 305 F.2d 721 (7th Cir. 1962); J. Kahn & Co. v. Clark, 178 F.2d 111 (5th Cir. 1949). Such agreements need not be written nor formally submitted, so long as the record reflects that mutual assent to settle the litigation has been orally expressed. Main Line Theatres, Inc. v. Paramount Film Distributing Corp., 298 F.2d 801 (3rd Cir. 1962), certiorari denied 370 U.S. 939, 82 S.Ct. 1585, 8 L.Ed.2d 807 (1962). Conversely, it is obvious that the Court cannot thrust a settlement upon parties where no settlement was intended and no mutual assent necessary to support an enforceable contract was manifested. See Theatre Time Clock Co., Inc. v. Motion Picture Advertising Corp., 323 F.Supp. 172 (E. D.La.1971); Autera v. Robinson, 136 U. S.App.D.C. 216, 419 F.2d 1197 (1969).

In the instant case, as the italicized portions of the transcript quoted above demonstrate, the parties were far from a meeting of the minds. Rather, Katy had indicated a willingness to move toward closing the Kilpatrick School and integrating its faculty and students with the Katy Elementary School without judicial compulsion, and the Government had evinced an intention to be reasonably accommodating in respect to the mechanics. As recognized by the Court at the time (see Tr. p. 17, line 20), the essential terms had not been settled upon. It is blackletter law that such an agreement, which is at most an agreement to agree in the future upon unspecified material terms, is nugatory and unenforceable. As Professor Corbin stated the rule, "(i)f the document or contract that the parties agree to make is to contain any material term that is not already agreed on, no contract has yet been

made; and the so-called 'contract to make a contract' is not a contract at all" 1 Corbin, Contracts, § 29, at 67–71; 1 Williston on Contracts § 45; Betty Lee Shoes, Inc. v. Karl's Shoe Stores, Ltd., 293 F.2d 429 (5th Cir. 1961); Radford v. McNeny, 129 Tex. 568, 104 S.W.2d 472 (Tex.Comm'n App. 1937, opinion adopted); Traweek v. Radio Brady, Inc., 441 S.W.2d 240 (Tex.Civ.App.—Austin 1969, writ ref'd n. r. e.).

The references in the record to the *Singleton* decision do not render this agreement to agree any less indefinite. It is clear that Katy never intended to consent to imposition of the *Singleton* conditions in their detailed totality. To the contrary, Katy's clear intention was to proceed promptly to desegregate faculty with student desegregation to follow the next semester, or, alternatively, to close the all-black elementary school, thus achieving student and faculty desegregation almost immediately. The latter option was promptly carried out. To the extent that the rather ambiguous allusion of the Assistant United States Attorney General to the *Singleton* case was intended by the Government to incorporate by reference in its offer all the aspects of the *Singleton* decree, the expression of assent by Katy's attorney was non-responsive to the offer, was based upon an understanding of the offer different from the offeror's understanding, did not operate to form a contract and was expressly repudiated by counsel for Katy at the in chambers unreported conference held on November 6, 1970, at the request of the Government.

As this Court had occasion to observe in connection with the breakdown of another ill-starred settlement agreement:

If a person wishes to enter into a bilateral contract with someone else, he informs the other person of this by offering to exchange a promise he is willing to make for another promise he would like the other person to make in return. A contract is formed if the other person agrees to the exchange.

If the offeree's understanding of the offer, that is, of the promises offered and requested, coincide with the offeror's understanding, and his acceptance is unequivocal, there is a contract in accordance with the mutual understanding of its terms. However, complications ensue if the meaning conveyed by either offeror or offeree fails to coincide with the meaning intended. To say that the minds of the parties must "meet" on every material or essential element of the proposed contract is misleading, for such is often not necessary. Nonetheless, because to form a contract the offeree must give the promise requested, the Court, as a predicate for deciding whether a contract has been formed, often must place itself in the shoes of each party and determine the meaning each gave to the words which passed between them. See generally 3 Corbin §§ 538, 543A–B; 1 Williston § 95.

Kurio v. United States, 66–H–509 (S.D. Tex., Memorandum and Order of June 15, 1970), at pp. 48–49.

 In placing itself in the shoes of the parties, for the purpose of determining the board's obligations under the accord announced on November 4, 1970, this Court concludes with confidence that Katy did not attribute to the *Singleton* reference the same meaning which the Government now seeks to attach to it. It follows that implementation of the *Singleton* decree did not become part of Katy's undertaking. Such was the Court's interpretation of the terms of the agreement at the time that settlement was announced. Such was also the Court's view when it approved a portion of the Stipulation and Advice of November 6, 1970, simultaneously noting in longhand that these were provisions "as to which the parties are in complete agreement." [3] Such is still the view of

---

3. See Stipulation and Advice to the Court of November 6, 1970, tabbed as document #44 in C.A. No. 70–II–832. As the school board has complied with the portion of that decree which was approved by the Court, it would appear that the

the Court. Accordingly, movant's proposed decree, predicated as it is upon a nonexistent agreement, shall not be entered.

Implicit in the Government's position on the instant motion is the contention that the *Singleton* remedies, being standard and legally proper in the typical desegregation case, should be imposed upon the school district regardless of the intent of the parties. This argument is without merit. In this Circuit, it has been made quite clear that the legal sufficiency of the terms of a settlement agreement is an irrelevant consideration in construing the meaning of such an agreement. As Chief Judge Brown pointed out in Texas Eastern Transmission Corp. v. Federal Power Commission, 306 F.2d 345, 357 (5th Cir. 1962), certiorari denied Manufacturers Light & Heat Co. v. Texas Eastern Transmission Corp., 375 U.S. 941, 84 S. Ct. 347, 11 L.Ed.2d 273 (1963):

> A settlement by its very nature is a compromise—a process by which positions, legal or factual, no matter how seriously maintained or legally supportable, are surrendered in whole or in part to achieve peace. If it is to be really a settlement, the parties will have weighed, consciously or unconsciously, the relative importance of subsidiary factors. Each party must give. How much to give is a matter for each party. Seldom will it ever be possible to determine retrospectively what the other would have done had the adversary insisted upon a different term in the compromise. *It is only certain that it is not sound to test that in terms of what each "legally" had to do, or had the right to expect the other to do.* (emphasis added)

Therefore, whether Katy's limited concession relating to student assignment would have been by itself a legally sustainable result after trial on the merits is an unsound inquiry in assessing the

order is now moot as a practical matter. Procedurally, this clears the decks and returns the suit to the posture of November 6, 1970, at which time there were

intent of the parties to the aborted settlement, and clearly does not justify this Court in unilaterally amending a stipulation to conform with one party's notion of what should have been included in a final decree had it pursued the case to judgment and prevailed.

Finally, wording of the Government's motion suggests that entry of its proposed decree without further ado is required by the mandate of the Fifth Circuit issued July 6, 1971. This suggestion borders on the disingenuous. It is obvious from the opinion of the Court of Appeals that this Court is required only to direct the school board forthwith to reconsider its position in light of *Swann*. It is equally obvious that the Court of Appeals' reference to *Singleton* and *Hinds County* contemplates implementation of those provisions only in the event that the school board is ultimately found to be in violation of the law. Before that can occur, there must be a hearing on the merits, a trial. In contested lawsuits, even desegregation cases, due process of law still requires that a judgment be preceded by a reasoned adjudication based upon a record comprised of evidence adduced with procedural regularity. Surely all deliberate speed has not now accelerated to the point that defendant school boards must be deprived of a trial, which the Government's motion implies.

Accordingly, it is ordered that:

(1) Plaintiff's motion to enter decree is denied.

(2) This Court's prior action in approving the partial stipulation of November 6, 1970, being moot, is hereby revoked.

(3) Pending the settings hereinafter made, defendant Katy Independent School District shall forthwith reconsider its settlement posture in the light of the principles established in *Swann* insofar as they relate to the issues presented in this case.

pending motions to dismiss based on the asserted insufficiency of the Attorney General's certificate.

(4) All pending motions of defendants Katy Independent School District and Texas Education Agency, including their motions to dismiss as related to the Certificate problem, as well as a trial on the merits, are set for Tuesday, the 18th day of January, 1972, at 9:30 a. m., Houston, Texas.

(5) The Court has accepted the Government's admission to the effect that complaints which were relied upon in issuing the Certificate were not received from parents of children attending school in Katy Independent School District. Should it become necessary to rule upon the Certificate question, a relevant inquiry would be whether letters have been received from within the District subsequent to the Government's previous admission on the subject. Accordingly, plaintiff shall, within 30 days, produce for in camera inspection by the Court letters of complaint, if any, which have been received subsequent to September 4, 1970, from parents of children residing in Katy Independent School District. If no such letters have been received, a stipulation to that effect would suffice.